## 64114. AUER v. BLACK et al.

McMURRAY, Presiding Judge.

On September 25, 1978, Linda J. Auer was employed as a receptionist in the office of a group of doctors practicing as West Paces Ferry Medical Clinic (some practicing individually in the group and others as "P. C."). She was given a pre-employment physical examination which was unremarkable at that time. However, on or about October 4, 1978, she complained of back pain and was examined and treated (using traction and with drugs) by several of the physicians in the group. During this period of treatment she was hospitalized for four days from October 9, 1978, to October 12, 1978. Eventually she was terminated in the latter days of December 1978.

On or about August 16, 1979, she filed a claim for workers' compensation, and a hearing was held. In the meantime, the workers' compensation insurer for the group, by and through its counsel, defended the claim for the employer/insurer and investigated the claim. A report of one of the doctors who treated the claimant Auer was prepared in narrative letter form on October 5, 1979, and was addressed to the insurer and to whom it may concern. He set forth therein his evaluation and treatment and that no objective evidence was found of any significant problems in the patient. He stated that she had never claimed her back trouble was due to an injury on the job. He then gave his opinion ("I think") that the vast majority of her complaints were psychological in nature. The narrative report contained a statement that the doctor did not want to seem vindictive but it was his "firm medical opinion that this patient is trying to defraud the Workmen's Compensation out of money," reiterating that there was no objective evidence of any on-the-job injury and that she was "trying to get money because of her financial situation" she was not entitled to hospitalization insurance and her extremely poor work attitude ("very hostile") necessitated her termination from employment. He further stated that at no time while employed "did she ever report any relationship between the back pain and anything related to her job," and her hospital records and her office records gave no history of such; and again repeated that he thought "this patient is trying to defraud the Workmen's Compensation Board for money that she should not get," that he would be glad to give a

complete legal deposition and that "her own personal lawyer should be made aware of these unequivocal medical facts."

Prior to the hearing of the claim her counsel subpoenaed the medical reports, including the narrative report of this particular doctor shown above. At the end of the hearing her counsel requested that the record be held open so that a proper certified copy of the records he subpoenaed could be provided with reference to this hearing. In a discussion with the court (administrative law judge) and counsel for both sides, the court suggested that "all the medical and all" be submitted "as claimant's and defendant's exhibits." Counsel for claimant then identified these records as "Claimant's and Defendant's Exhibit No. 1," "a package of Xeroxed documents stapled together which were supplied to [claimant's counsel] from the employer," which exhibit contained the narrative letter report referred to above.

The parties to the workers' compensation claim then entered a stipulation and agreement to settle the claim for $1,500, including the payment by the employers' insurance carrier of the various medical bills, including several bills of the doctors who were also members of the employer group. Based upon this stipulation and agreement an award was made requiring the employer and insurer to pay the claimant $1,500 of which $500 thereof was paid directly to the claimant's attorney.

Thereafter, Linda J. Auer, as plaintiff, sued the members of the group of doctors, as defendants, for libel based upon the alleged libelous statements made by the letter of the doctor with reference to her claim which had been forwarded to the insurer by him. Plaintiff contends the contents of the letter were libel per se and if any privilege had been afforded the defendant doctors such privilege had been abused.

After discovery both plaintiff and defendants moved separately for summary judgment, the defendants contending that the subject matter of the letter was absolutely and utterly privileged. A hearing was held, and the trial court denied the plaintiff's motion for summary judgment and granted the defendants' motion for summary judgment. Plaintiff appeals. *Held:*

Under Code § 105-709 certain comments and statements are deemed privileged communications, including those made bona fide in the performance of a public duty; a private duty, either legal or moral; and those made with the bona fide intent, on the part of the speaker, "to protect his own interest in a matter where it is concerned." The narrative letter report here was forwarded to the insurer by one of the employers, and both of these parties had a joint interest in the outcome of the claim. As shown in the record of the

workers' compensation claim, claimant's attorney obtained same by subpoena, stating they were supplied to him by claimant's employer, and same was introduced jointly as a part of the medical records.

Plaintiff (the claimant in the workers' compensation claim) contends the letter was first published under Code §§ 105-701 and 105-705 when it was communicated to the insurer, that is, a person other than the person libeled, when it was forwarded by a member of the employer group to the insurer. However, the defendants here contend it was absolutely privileged as between the employer and the insurer, and any publication of same occurred when the plaintiff subpoenaed the document as part of the medical report for use and was used in the workers' compensation hearing published by the plaintiff. See *Lamb v. Fedderwitz,* 68 Ga. App. 233, 234 (22 SE2d 657), s.c. affd. 195 Ga. 691 (25 SE2d 414).

The defense of privilege in a libel action is one of confession and avoidance, that is, admission of the publication but on a privileged occasion and bona fide in promotion of the object for which the privilege was granted. Clearly the statements in the narrative report were made by the doctor in the performance of his duties, public and private, and were made to protect his own interest in the matter. See *Sherwood v. Boshears,* 157 Ga. App. 542, 543 (278 SE2d 124). The report was also pertinent and material to the claim for workers' compensation, a legal matter, already filed by the claimant. However false and malicious such statements would be, they would not be libelous. See *Veazy v. Blair,* 86 Ga. App. 721, 724 (2) (72 SE2d 481); *Jordan v. Burger King Corp.,* 124 Ga. App. 652 (185 SE2d 577), and cits. But assuming without deciding that these statements were libelous and were published in the workers' compensation hearing they were not actionable as there can be no recovery for an invited libel. See *King v. Masson,* 148 Ga. App. 229, 230 (1) (251 SE2d 107); *Beck v. Oden,* 64 Ga. App. 407, 411 (13 SE2d 468); *Ga. Power Co. v. Busbin,* 249 Ga. 180 (289 SE2d 514). For all the foregoing reasons the trial court did not err in denying the plaintiff's motion for summary judgment and in granting the defendants' motion for summary judgment.

*Judgment affirmed. Banke and Birdsong, JJ., concur.*

DECIDED SEPTEMBER 9, 1982 —
REHEARING DENIED OCTOBER 8, 1982 —

*Charles W. Field,* for appellant.

*Michael G. Frick,* for appellees.