A92A1097. KITCHEN HARDWARE, LTD. v. KUEHNE & NAGEL, INC.
(421 SE2d 550)

McMURRAY, Presiding Judge.

Randy Kaas and Dana Kaas incorporated appellant Kitchen Hardware, Ltd. (hereinafter "Kitchen"), a kitchen utensil wholesaler, in the summer of 1989 and commenced operations in September. Shortly afterward, the appellee Kuehne & Nagel, Inc. (hereinafter "K & N"), an international freight forwarding business located in Europe and New York with a branch office in Atlanta, agreed to supply Kitchen with a line of credit and perform freight forwarding services.

In November, Kitchen received invoices from K & N which it disputed as containing charges that were excessive or not agreed upon. Kitchen's treasurer Dana Kaas claimed that when she questioned him, K & N's sales manager Hans Mixdorf informed her K & N would "teach [Kitchen] a lesson" for challenging the invoices. Although Mixdorf denied such a threat, on the same date he was accused of making the statement he transmitted a telefax message to K & N's Portuguese shipping affiliate Nakutranslis Transitarios (hereinafter "N. T."), reciting in pertinent part: "[Kitchen] has money problems and doesn't want to pay our transportation charges for the former shipments. Pls hold all their freight air and ocean until further advise (sic). . . ." The transmission of this message was within the scope of Mixdorf's responsibilities with K & N in regard to credit/

invoice problems.

N. T. handled the shipments of goods to Kitchen originating in Portugal from the A Metalurgica corporation (hereinafter "A. M."), a Portuguese manufacturer and supplier to Kitchen. When N. T. informed A. M. that it would no longer complete shipments for Kitchen, A. M. inquired and N. T. transmitted the fax message from K & N to it in response. The fax transmittal was in turn communicated by A. M. to Kitchen's creditor and purchasing agent in Europe, Julemi. As a result, A. M. ceased the manufacture of goods for Kitchen and K & N froze all shipments, including some that had been packaged and were ready to be transported. As a further result, Julemi altered the terms of its contract with Kitchen to require prepayments, and arrangements with some mail order catalogs were adversely affected.

Kitchen filed the instant suit against K & N and N. T. in four counts (alleging service upon the latter through the Hague Convention): Count One against K & N for communicating a defamatory statement to N. T.; Count Two against N. T. for communicating the defamatory statement to Kitchen's suppliers; Count Three against K & N through its agent N. T. for publication of false material; and Count Four against both defendants for tortious interference with the contracts between Kitchen and its suppliers and with its business opportunities. Kitchen sought damages for lost sales and destruction of its reputation with its manufacturers and financial agents in Europe and with the business community. It appears that N. T. filed no answer or other responsive pleadings. K & N moved for summary judgment as to Counts One, Three and Four, which was granted and from which Kitchen appeals. K & N has filed a motion in this court to dismiss the appeal, contending that because the case remains pending as to N. T., Kitchen has not followed the appropriate appellate procedure. *Held*:

1. The motion to dismiss the appeal is denied. "An order granting summary judgment on any issue or as to any party shall be subject to review by appeal. An order denying summary judgment shall be subject to review by direct appeal in accordance with [OCGA § 5-6-34 (b)]." OCGA § 9-11-56 (h). Subsection (h), "which permits direct appeal from any grant of summary judgment, is an exception to the finality rule expressed in [OCGA § 9-11-54]." *Edwards v. Davis*, 160 Ga. App. 122 (1) (286 SE2d 301) (1981).

2. The trial court found that only one message was sent by K & N to N. T., its "sister" company, and that K & N had no communication with any of Kitchen's other suppliers; that statements made with good faith intent on the part of the speaker to protect its interest in a matter in which it is concerned are privileged; that K & N had proved the message it intended to relay was that it did not want to be liable

for payments on further shipments of goods if Kitchen had not yet paid for previous shipments; that Kitchen had not substantiated or quantified any damages flowing from the one message sent to N. T.; and that thus there was no genuine issue of material fact to try by a jury. Kitchen contends that this ruling addresses only the privilege defense raised by K & N, without reaching the issues of libel per se and tortious interference with contracts presented by its complaint. It asserts that K & N's argument, that it did not intend to injure Kitchen, ignores the deposition testimony of Dana Kaas that Hans Mixdorf told her he intended to teach Kitchen a lesson; and that "[s]tatements which tend to injure one in his trade, occupation or business are libelous per se. [Cit.]" *John D. Robinson Corp. v. Southern Marine &c. Co.*, 196 Ga. App. 402, 404 (1) (395 SE2d 837) (1990).

"The publication of the libelous matter is essential to recovery." OCGA § 51-5-1 (b). " '(T)he usual rules of respondeat superior (the principal is liable for the torts of his employee committed while acting within the scope of his employment) are applicable in libel cases.' [Cit.] Thus, there is no requirement that the agent be expressly authorized or directed by his principal to publish the libel. [Cits.]" *Mulherin v. Globe Oil Co.*, 173 Ga. App. 790 (1), 791 (328 SE2d 406) (1985). Accord *Gantt v. Patient Communications Systems*, 200 Ga. App. 35 (3) (406 SE2d 796) (1991). However, statements made with a good faith intent on the part of the speaker to protect his interest in a matter in which he is concerned are privileged. OCGA § 51-5-7 (3).

"The defense of privilege in a libel action is one of confession and avoidance, that is, admission of the publication but on a privileged occasion and bona fide in promotion of the object for which the privilege was granted." *Auer v. Black*, 163 Ga. App. 787, 789 (294 SE2d 616) (1982). While the question of good faith and privilege is normally one for the jury, " ' "[o]n summary judgment the issue is simply whether defendant established as a matter of law that he made privileged statements." ' [Cits.] Examination of the record in toto reveals that the trial court did not err in concluding that as a matter of law publication [by the fax message] was privileged." *Southern Business Machines &c. v. Norwest Fin. Leasing*, 194 Ga. App. 253, 259 (4), 260 (390 SE2d 402) (1990). " 'It is well settled that a communication made by one corporate agent to another is not publication in the legal sense. See *Kurtz v. Williams*, 188 Ga. App. 14, 15 (371 SE2d 878) (1988).' " *Lepard v. Robb*, 201 Ga. App. 41, 42 (1), 43 (410 SE2d 160) (1991). Since the evidence was undisputed that N. T. was an affiliated corporate branch of K & N and was the sole recipient of any information from K & N, there was no jury question presented on the issue of publication and summary judgment was proper.

Nor, is Kitchen entitled to reversal of the summary judgment on the complaint insofar as the subsequent publications to A. M. and

Julemi are concerned. " 'Every publication of matter which is shown to be libelous is a separate cause of action; and where the plaintiff brings suit for publication at designated places, he cannot show publication to other persons at a different time and place, since it would tend to prove a cause of action separate from the one alleged in the petition.' [Cit.] Even if the alleged defamation . . . was the same . . . , a republication is still a separate cause of action. 'Each publication of (a) libel by different persons constitutes a separate and distinct wrong to the aggrieved party.' [Cits.]" *Deal v. Builders Transport*, 192 Ga. App. 511, 512 (385 SE2d 293) (1989). In such cases, summary judgment in defendant's favor " 'as to all' " of the claim asserted against it is proper even without reaching the questions of whether the statement was or was not defamatory or actionable as a matter of law. Id. at 512.

3. We also reject Kitchen's contention that a jury issue exists on the question of tortious interference with the contracts between Kitchen and Julemi and A. M. Only " '[t]he intentional and *non-privileged* interference by a third party with existing contractual rights and relations constitutes a tort for which an action will lie.' " *Forehand v. Perlis Realty Co.*, 198 Ga. App. 165, 166 (400 SE2d 644) (1990). To authorize such a verdict, the evidence must show that the defendant " 'acted improperly and without privilege. . . .' " *Blalock v. Wilensky*, 199 Ga. App. 434, 440 (13) (405 SE2d 698) (1991); *Contractors' Building Supply v. Gwinnett Sash & Door*, 199 Ga. App. 38 (2) (403 SE2d 844) (1991). Since the publication from K & N to N. T. was a privileged communication by which it sought to protect its own interests, no question of tortious interference could arise.

4. We further agree with the trial court that Kitchen did not substantiate or quantify any damages flowing from the fax message K & N sent to N. T. At most, the statements made therein constituted " 'disparaging words' " which are actionable only when special damage is incurred. *Meyer v. Ledford*, 170 Ga. App. 245 (1), 246 (316 SE2d 804) (1984). See OCGA §§ 51-5-4 (b); 51-12-2 (b). Kitchen produced only speculative testimony as to lost future sales and catalog space preferences, and Randy Kaas admitted it was "difficult to quantify the damages." Even though a large shipment of cake pans was delayed, when A. M. resumed production Kitchen actually shipped more than originally ordered. There was no evidence of any company refusing to do further business with Kitchen, which had been operating only briefly at the time the message was sent. Since Kitchen was unable to substantiate what, if any, losses it suffered, or that such damages actually flowed form a tortious act committed by K & N, summary judgment was appropriate on this issue as well. See generally *Denton v. Con-Way Southern Express*, 261 Ga. 41, 42 (402 SE2d 269) (1991). We find no grounds for reversal.

*Judgment affirmed. Sognier, C. J., and Cooper, J., concur.*

DECIDED JUNE 29, 1992 —
RECONSIDERATION DENIED JULY 22, 1992 —

Goldner, Sommers, Scrudder & Bass, Henry E. Scrudder, Jr., Carroll G. Jester, Jr., for appellant.

Macey, Wilensky, Cohen, Wittner & Kessler, Mark L. Golder, for appellee.