## A96A0037. CHOICE HOTELS INTERNATIONAL, INC. v. OCMULGEE FIELDS, INC.
### (474 SE2d 56)

SMITH, Judge.

This case arises out of the alleged wrongful cancellation of five hotel franchise agreements. Appellant Choice Hotels International, Inc. ("Choice"), a Maryland corporation, agreed to license its "Quality Inn" and "Comfort Inn" names as well as marketing and reservations services to Ocmulgee Fields, Inc. ("Ocmulgee"), a corporation which operates motels in the Macon area. The franchise agreements were generally identified by number and consisted of three agreements for construction of new Comfort Inns in Florida and Georgia (FL-316, GA-152, GA-153), another for converting a "non-brand" motel to a Quality Inn (GA-154), and finally, one for relicensing a Quality Inn (GA-042). The first three agreements contained a "begin construction" date, and the remaining two contained a "renovation completion" date, requiring certain modifications to bring the motels up to Choice's standards. Typically, Choice required a 12-month "begin construction" date calculated from the date of acceptance of the agreement, but Ocmulgee negotiated 24-month dates that were added to the contracts by addendum. The renovation clauses had deadlines of eight months.

When the eight-month deadline on completion of renovation for the Quality Inn conversion expired, Choice sent a notice of default letter to Ocmulgee referring to "GA-154." Ocmulgee asserts it believed the letter applied to all five agreements; Choice, on the other hand, contends that Ocmulgee used this opportunity to escape from all five franchise agreements after Choice refused to further extend the construction deadlines. Ocmulgee wrote separate letters to Choice asserting its belief that Choice had terminated all the

franchise agreements and asserting claims for setoff.

Choice responded that its letter referred only to the GA-154 project and was not intended to terminate any other agreement, but Ocmulgee's principal had already filed suit. After it received the letters from Choice stating that the other agreements were not involved, Ocmulgee entered into a conflicting franchise agreement with Holiday Inn. Choice then wrote a letter to Holiday Inn informing it that Ocmulgee was still under contract with Choice.

Ocmulgee brought this action alleging breach of contract and fraud against Choice and Ken Holland, an employee of Choice.[1] It sought refund of all its franchise fees, all costs incurred in renovation of the properties, damages for injury to reputation, punitive damages, and costs of litigation including attorney fees. It later added a count of tortious interference with contractual relations. At trial, a verdict was directed in favor of Holland. The jury found in favor of Ocmulgee and against Choice on breach of contract and tortious interference and awarded compensatory and punitive damages. The jury also awarded damages to Choice on its counterclaim, but struck that award after being advised by the trial court, "You can't find in favor of both parties." The trial court awarded attorney fees on the breach of contract count. Choice appeals from the judgment on the jury verdict.

1. Ocmulgee's principal, Jones, testified on deposition that he never intended to adhere to the construction and renovation deadlines. He explained that Choice had allowed extensions on construction deadlines in the past, and he expected additional extensions to be allowed. In support of this, he offered testimony and documents regarding past extensions in 1964 and 1968 and letters at other times in which he referred to expected extensions. This material was admitted over objection on several grounds, one being that it violated the parol evidence rule. Choice argues that the admission of this evidence was error because it was used to vary the terms of the franchise agreements, each of which contained an integration or merger clause stating it was the entire agreement of the parties. We agree.

Well-established Georgia law provides that matters outside a contract cannot be used to vary or explain the unambiguous terms of an agreement. "While, generally, an ambiguity in a contract may be explained by parol evidence, parol evidence is inadmissible to add to, take from or vary a written contract. (OCGA §§ 13-2-2 (1); 24-6-1; and 24-6-2.) Where the contract is complete on its face and the evi-

---

[1] We note that Holland's presence as a party destroyed diversity for federal jurisdiction purposes.

dence offered to explain the ambiguity contradicts the terms of the written instrument, it should not be admitted." (Citations and punctuation omitted.) *Wages v. Mount Harmony Mem. Gardens*, 189 Ga. App. 99, 100 (1) (375 SE2d 57) (1988) (evidence of tenant's "understanding" of payment terms of lease was contradictory to written instrument and hence inadmissible). See also *Loveless v. Sun Steel*, 206 Ga. App. 247, 248-249 (1) (424 SE2d 887) (1992). Moreover, "[p]arol evidence of a mere understanding arrived at subsequent to the contract as to the meaning of the prior writing is inadmissible." Green, Ga. Law of Evidence (4th ed.), § 216, citing *Hawkins v. Studdard*, 132 Ga. 265, 274 (6) (63 SE 852) (1909). Particularly when a contract contains a merger clause, parol evidence is inadmissible to challenge the unambiguous terms of the contract, and parol evidence of collateral oral agreements is properly excluded. *Leventhal v. Seiter*, 208 Ga. App. 158, 162 (4) (430 SE2d 378) (1993).

Ocmulgee contends that the information about past agreements was admissible as "background evidence," citing *Powell v. Ferguson Tile & Terrazzo Co.*, 125 Ga. App. 683, 687 (3) (188 SE2d 901) (1972), overruled on other grounds, *Franklyn Gesner Fine Paintings v. Ketcham*, 252 Ga. 537, 540 (314 SE2d 903) (1984), and *Hodnett v. Hodnett*, 99 Ga. App. 565 (1) (109 SE2d 285) (1959). Those decisions are inapposite here. *Powell* allowed parol evidence to prove the real party in interest to a contract, but noted explicitly: "*Where it does not vary the terms of a contract* evidence is admissible to show for whose benefit the contract was made or the real party at interest. [Cits.]" (Emphasis supplied.) 125 Ga. App. at 687 (3). *Hodnett* involved relevance rather than hearsay; it states only: "Evidence which may itself be irrelevant may nevertheless be so interwoven with relevant testimony as to require its admission in elucidation of the relevant testimony. [Cits.]" 99 Ga. App. at 567 (1). Neither of those cases is authority for the admission for "background purposes" of parol evidence varying the express terms of a written agreement containing a merger clause.

Nor can testimony regarding the modification of other, separate contracts constitute evidence of a "mutual departure" from *this* contract within the meaning of OCGA § 13-4-4. "Any evidence of a departure from the terms of previous [contracts] has no bearing upon the outcome of the case sub judice." *Minor v. C & S Nat. Bank*, 177 Ga. App. 115, 118 (1) (338 SE2d 466) (1985); see also *Wright Carriage Co. v. Business Dev. Corp. &c.*, 221 Ga. App. 49, 52 (471 SE2d 218) (1996) ("Any evidence of mutual departure from the terms of the original [agreements] has no bearing upon the controversy concerning the new agreement."). Any other interpretation would render meaningless the separately negotiated extension clauses and the merger clauses contained in the franchise agreements. Evidence of an under-

standing contradictory to the clear and express terms of the franchise agreements was inadmissible, and the trial court erred in admitting this testimony. Because under the facts of this case, the admission of this evidence was not harmless error, the judgment on the jury's verdict must be reversed and a new trial granted as to the breach of contract count.

2. Choice also complains of the trial court's refusal to instruct the jury on the defense of privilege to Ocmulgee's claim of tortious interference with contractual rights and its refusal to direct a verdict in Choice's favor on this issue. The tortious interference claim was based on Choice's letter to Holiday Inn stating that Ocmulgee was still under contract with Choice.

"To support a verdict for tortious interference with business relations the evidence must show the defendant (1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury." (Citations and punctuation omitted.) *Arford v. Blalock,* 199 Ga. App. 434, 440 (13) (405 SE2d 698) (1991), aff'd sub nom., *Wilensky v. Blalock,* 262 Ga. 95 (414 SE2d 1) (1992). "Only the intentional and non-privileged interference by a third party with existing contractual rights and relations constitutes a tort for which an action will lie. To authorize such a verdict, the evidence must show that the defendant acted improperly and without privilege." (Citations, punctuation and emphasis omitted.) *Kitchen Hardware, Ltd. v. Kuehne & Nagel, Inc.,* 205 Ga. App. 94, 97 (3) (421 SE2d 550) (1992).

The particular privilege applicable here is the protection of the speaker's interest under OCGA § 51-5-7 (3). This privilege, while primarily applicable to claims of libel or slander, may also be asserted as a defense to a claim of tortious interference with contractual relations. See *Kitchen Hardware,* supra. "[S]tatements made with a good faith intent on the part of the speaker to protect his interest in a matter in which he is concerned are privileged. OCGA § 51-5-7 (3)." Id. at 96. " 'To make the defense of privilege complete . . . good faith, an interest to be upheld, a statement properly limited in its scope, a proper occasion, and publication to proper persons must all appear.' [Cit.]" *Sherwood v. Boshears,* 157 Ga. App. 542, 543 (278 SE2d 124) (1981).

Choice's communication to Holiday Inn falls within the scope of this privilege. The retention of Ocmulgee in an existing franchise agreement, despite Ocmulgee's contention that Choice was in breach of the agreement, constituted a valid interest that Choice was entitled to uphold. The single letter directed to Holiday Inn to inform it of Choice's pre-existing contract was made on a proper occasion, its

publication was limited to those concerned (Choice, Holiday Inn, and Ocmulgee), and it was properly limited in scope. Compare *Southern Business Machines &c. v. Norwest &c.*, 194 Ga. App. 253, 258-260 (3), (4) (390 SE2d 402) (1990) (demand letters from collection agency under assignment agreement with plaintiff held privileged under OCGA § 51-5-7 (3), but over 50 harassing telephone calls in short time to single customer created jury issue as to reasonableness).

Moreover, at the time Choice sent the letter, Ocmulgee not only had threatened litigation but had actually filed suit in this matter. In *Auer v. Black*, 163 Ga. App. 787 (294 SE2d 616) (1982), the plaintiff alleged libel in the report of a physician evaluating her workers' compensation claim. This Court first noted that "the statements in the narrative report were made by the doctor in the performance of his duties, public and private, and were made to protect his own interest in the matter. [Cit.]" 163 Ga. App. at 789. Holding that "[t]he report was also pertinent and material to the claim for workers' compensation, a legal matter, already filed by the claimant," and was moreover "invited libel," this Court affirmed the award of summary judgment in favor of the defendants. Id. This privilege of protecting the speaker's interest in pending litigation is equally applicable to a claim for tortious interference. *Kitchen Hardware*, supra.

"Generally, the burden of proof lies on the plaintiff to show actual malice in order to rebut prima facie evidence of the defense of conditional privilege. [Cit.] The record reveals that the letter . . . was written in the normal course of business in an effort to resolve a bona fide dispute between two parties concerning their respective rights. As such, the communication clearly falls within the purview of OCGA § 51-5-7 (3) which bestows privilege on communications 'made with a good faith intent on the part of the speaker to protect his interest in a matter in which it is concerned.' [Cit.] There is no evidence in the record to support an allegation that appellee acted with actual malice." *Layfield v. Turner Advertising Co.*, 181 Ga. App. 824, 826 (354 SE2d 14) (1987). The trial court erred in refusing to direct a verdict in favor of Choice on Ocmulgee's tortious interference claim.

3. Choice's remaining enumerations of error are rendered moot by our holdings in Divisions 1 and 2. We note, however, that should a retrial of the breach of contract claim result in the consideration of the award of attorney fees under the terms of the contract,[2] the trial court should follow the appropriate standard of proof as established under Maryland law.[3] See *Maxima Corp. v. 6933 Arlington Dev. &c.*,

---

[2] The franchise agreements provide for the award of attorney fees to "the prevailing party (as determined by the Court)."

[3] The franchise agreements provide that they "shall be governed and construed accord-

641 A2d 977, 983 (Md. App. 1994) (trial court's evaluation of attorney fees must be supported by sufficient and competent evidence of record). See also *Southern Cellular Telecom v. Banks*, 209 Ga. App. 401, 402 (433 SE2d 606) (1993) (allocation of time and expense among successful and unsuccessful claims must be established in evidentiary hearing).

*Judgment reversed. Pope, P. J., and Andrews, J., concur.*

DECIDED JUNE 24, 1996 —
RECONSIDERATION DENIED JULY 11, 1996 —

*Jones, Cork & Miller, Thomas C. James III*, for appellant.

*Troutman Sanders, John J. Dalton, Martin, Snow, Grant & Napier, Cubbedge Snow III*, for appellee.