A97A1381, A97A1382. NATIONSBANK, N.A. v. SOUTHTRUST BANK OF GEORGIA, N.A. (two cases).
(487 SE2d 701)

ELDRIDGE, Judge.

Appellant NationsBank received a promissory note dated October 21, 1991, from M.O.D.E., Inc., in the amount of $170,000 and subsequently received a second note, dated December 22, 1994, in the original amount of $800,000; this second note was modified on May

15, 1995, by written agreement. In the October 21, 1991 agreement and in a separate security agreement, M.O.D.E., Inc., gave appellant collateral in one Komo Router, type VR508, serial number 1573, pursuant to a security agreement of such date, as well as any funds, balance, or credits in the hands of the appellant. A security agreement, dated December 22, 1992, for a December 22, 1992 note and any renewals, extensions, or substitutions for such note, listed as collateral an "x" mark beside each printed category, with a strike through for inclusion of specific items: accounts receivable, contract rights, chattel paper, or other rights to payment of money, as well as cash, all goods and merchandise, all proceeds and products of inventory, all equipment, machinery, tools, motor vehicles, supplies, furniture, and general intangibles. A security agreement dated September 23, 1994, was entered into by appellant and M.O.D.E., Inc., which covered accounts, inventory, and equipment. On January 14, 1993, appellant and Enterprise Financial Corporation (which received its financing from SouthTrust, was subordinated to SouthTrust, and loaned to the M.O.D.E. entities) entered into a debt subordination agreement with M.O.D.E., Inc., which M.O.D.E. Acquisition Corporation approved.

On January 13, 1993, appellant made a UCC filing to perfect its security interest against M.O.D.E., Inc., in Clayton County.

M.O.D.E., Inc. (borrower) and Burr Warne, H. Barton Hahn, John Patterson Raley, and Thomas Olmstead (guarantors) were given notices of default and demands that all checks, drafts, cash, and other remittances be deposited to an account with appellant and that the Komo Router, goods, merchandise, personalty, equipment, tools, motor vehicles, furniture, office supplies, and fixtures be turned over to appellant under the October 21, 1991, December 22, 1992, and September 23, 1994 security agreements; such demands were made by letters dated November 13, 1995 and April 24, 1996.

Three other related and intertwined corporate entities shared officers, directors, employees, and operated out of the same business premises as did M.O.D.E., Inc., which caused the assets of all corporations to be commingled. The parent corporation was M.O.D.E. Group, Inc., and the other corporations were S.P.W., Inc., and International Sign Acquisition Company, Inc. ("M.O.D.E., Sign").

Appellee SouthTrust Bank of Georgia ("SouthTrust") had outstanding loans and security agreements with M.O.D.E. Group, Inc., S.P.W., Inc., and M.O.D.E., Sign, which security interest covered substantially all of such corporations' assets. As to M.O.D.E., Inc., appellee had priority over appellant as to the general intangibles, because general intangibles were not covered in any of appellant's security agreements. Appellee filed its UCC financing statements. Appellant had a recorded priority as to all the assets of M.O.D.E., Inc. with the exception of general intangibles, while appellee had recorded priori-

ties as to the assets of M.O.D.E. Group, Inc., S.P.W., Inc., and M.O.D.E., Sign. When Enterprise Financial Corporation got into financial difficulty, it turned over to SouthTrust all its rights against M.O.D.E., Inc.

On April 24, 1996, NationsBank discussed and entered into an arrangement with Burr Warne, M.O.D.E., Inc.'s president and guarantor, in which he would have M.O.D.E., Inc. surrender all of the commingled assets of all the corporations to appellant, and appellant would, in turn, sell the assets to Impact Fixtures Company ("Impact"), a newly formed corporation, which appellee believed was controlled by Mr. Warne, allowing such assets to escape security interests held by appellee. In consideration flowing to Mr. Warne, not to the corporations, NationsBank promised to forbear enforcement of a personal judgment against Mr. Warne.

SouthTrust became concerned that the commingled assets might be transferred without regard to its security interest in the assets of the other corporations and that it would not receive any surplus proceeds from any purported sale to Impact by appellant. Consequently, SouthTrust's attorney, on April 25, 1996, informed Mr. Warne's attorney that SouthTrust intended to assert its rights as a secured creditor and would carefully investigate any facts surrounding a voluntary surrender of assets. Mr. Warne's attorneys, in turn, advised Mr. Warne and only then contacted NationsBank's attorney and informed NationsBank's counsel that Mr. Warne now refused to transfer the commingled assets. When asked why the refusal, Mr. Warne's attorneys gave their impressions as to what Mr. Warne understood the position of SouthTrust to be: that at bankruptcy Mr. Warne's discharge would be opposed by SouthTrust. Subsequently, appellant's counsel interpreted Mr. Warne's refusal to transfer the assets to NationsBank: under this second interpretation, SouthTrust would oppose Mr. Warne's discharge in bankruptcy based upon such possible grounds as "criminal conversion charges or something like that."

On May 10, 1996, appellant filed a complaint against appellee, alleging tortious interference with the agreement of M.O.D.E., Inc., and Mr. Warne to surrender the assets of the corporation. Service was acknowledged on May 20, 1996. Appellee filed its answer on June 19, 1996.

On May 23, 1996, SouthTrust filed an involuntary petition in bankruptcy against M.O.D.E., Inc.

On October 24, 1996, SouthTrust filed its motion for summary judgment. On November 26, 1996, NationsBank filed an amendment to its complaint adding claims for tortious interference with business relations.

Appellant took the depositions of counsel for appellee, South-

Trust, who objected to certain questions as a violation of attorney-client privilege and refused to answer. On December 5, 1996, appellant moved to compel answers to the questions which were objected to and to strike the affidavits filed by appellee's counsel. On December 13, 1996, appellant moved to extend discovery so that discovery could be completed in regard to the newly asserted claims; appellant's counsel did not file their affidavit under OCGA § 9-11-56 (f) stating that they needed more time to obtain affidavits to oppose the motion for summary judgment.

On December 17, 1996, oral argument was held on the motion for summary judgment, and the trial court, from the bench, ruled in favor of the appellee. At no time during the oral argument on the motion for summary judgment did appellant's counsel object to proceeding prior to the trial court having ruled on its motion to compel and to extend discovery. On December 23, 1996, the trial court entered its written order granting summary judgment on the claim of tortious interference with contractual relations, as well as the claim of tortious interference with business relations, before ruling on appellant's motion to compel and to extend discovery.

On January 17, 1997, appellant filed its notice of appeal of the December 23, 1996 order granting summary judgment. On January 16, 1997, the trial court executed a final judgment.[1]

## Case No. A97A1381

1. The first enumeration of error is that the trial court erroneously granted summary judgment on the theories of tortious interference with contractual relations and business relations. We do not agree.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of

[1] The judgment, dated January 16, 1997, with a filing stamp of January 17, 1997, was mailed to appellant and they relied upon it in filing a notice of appeal on January 29, 1997, which contained a copy. Subsequently, the January 16, 1997 judgment received a second filing stamp of January 22, 1997, which was never delivered to appellant and which appears on the docket for January 22, 1997; no docket entry for January 17, 1997 was ever made, notwithstanding the filing stamp containing the earlier date of filing. It appears that the clerk's office marked the judgment of January 16, 1997, as filed on January 17, 1997, without placing it immediately upon the docket and thereafter lost it so that an unstamped copy had to be *refiled* and in fact was marked entered on January 22, 1997, but a copy was not transmitted to appellant as required by law. OCGA § 15-6-21 (c). Appellee had to be aware of such multiple filings of the judgment, because appellant mailed the earlier copy to appellant and attached a later stamped copy to its motion for attorney fees. The parties and this Court will treat the notice of appeal as being timely filed. See OCGA § 5-6-48; *Brumby v. State*, 264 Ga. 215 (443 SE2d 613) (1994); *Bethsaida Dev. v. Charter Land &c. Corp.*, 232 Ga. 641 (208 SE2d 462) (1974); *Bagwell v. Henson*, 124 Ga. App. 92 (183 SE2d 485) (1971); *Franklin v. Sea Island Bank*, 120 Ga. App. 654 (171 SE2d 866) (1969).

material fact and that the undisputed facts, viewed in the light most favorable to the non-moving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991). In the case sub judice, appellee successfully shifted the burden to appellant, which failed to present evidence to create a material issue of fact as to its claims.

Tortious interference with business or contractual relations has four common essential elements necessary for liability, i.e., the defendant: (1) acted improperly and without privilege; (2) acted purposefully and maliciously with the intent to injure; (3) induced a third party not to enter into or continue a business relationship with the plaintiff; and (4) caused the plaintiff some financial injury. See *Choice Hotels Intl. v. Ocmulgee Fields,* 222 Ga. App. 185, 188 (2) (474 SE2d 56) (1996); accord *Employing Printers Club v. Doctor Blosser Co.,* 122 Ga. 509 (50 SE 353) (1905); *Valdez v. Power Indus. Consultants,* 215 Ga. App. 444, 447 (451 SE2d 87) (1994); *Renden, Inc. v. Liberty Real Estate &c.,* 213 Ga. App. 333, 334 (444 SE2d 814) (1994); *Green v. Johnston Realty,* 212 Ga. App. 656, 659-660 (442 SE2d 843) (1994); *Artford v. Blalock,* 199 Ga. App. 434, 440 (13) (405 SE2d 698) (1991); *Bodge v. Salesworld,* 154 Ga. App. 65, 66 (267 SE2d 505) (1980); *Dale v. City Plumbing &c. Co.,* 112 Ga. App. 723 (2) (146 SE2d 349) (1965); Restatement, Second, Torts, p. 11, § 766, h.

A. (1) Privilege and Wrongful Interference.

"The particular privilege applicable here is the protection of the speaker's interest under OCGA § 51-5-7 (3). This privilege, while primarily applicable to claims of libel or slander, may also be asserted as a defense to a claim for tortious interference with contractual relations. See *Kitchen Hardware* [*Ltd. v. Kuehne & Nagel, Inc.,* 205 Ga. App. 94, 97 (3) (421 SE2d 550) (1992)]. '(S)tatements made with a good faith intent on the part of the speaker to protect his interest in a matter in which he is concerned are privileged. OCGA § 51-5-7 (3).' Id. at 96. 'To make the defense of privilege complete . . . good faith, an interest to be upheld, a statement properly limited in its scope, a proper occasion, and publication to proper persons must all appear. [Cit.]' *Sherwood v. Boshears,* 157 Ga. App. 542, 543 (278 SE2d 124) (1981)." *Choice Hotels Intl. v. Ocmulgee Fields,* supra at 188; see also *Southern Business Machines &c. v. Norwest Financial Leasing Co.,* 194 Ga. App. 253, 258-260 (3), (4) (390 SE2d 402) (1990); see also as to privilege on summary judgment, *Thomas v. Hillson,* 184 Ga. App.

302, 303-304 (361 SE2d 278) (1987).

(2) In the case sub judice, SouthTrust has shown that the statement complained of was made in good faith under OCGA § 51-5-7 (3) and (7); that an interest was shown in appellee; that the statement was made on a proper occasion; and that the publication was made to persons who also had a proper interest, i.e., Mr. Warne's attorneys. Thus, privilege was shown.

SouthTrust stood in the shoes of Enterprise Financial Corporation, which had a subordination agreement with appellant and M.O.D.E., Inc., separate and apart from any other direct security and collateral agreements with the other M.O.D.E. entities independently giving priority over appellant. Thus, SouthTrust was not a stranger to any new or modified security agreement or surrender of assets between appellant and M.O.D.E., Inc., because SouthTrust had a right to ensure that the Enterprise Financial Corporation's subordination agreement was not violated by such new agreement between appellant and M.O.D.E., Inc. By entering into the subordination agreement with Enterprise Financial Corporation, NationsBank made SouthTrust the third-party beneficiary of any subsequent agreement with M.O.D.E., Inc., to the extent that any subsequent agreement did not breach the terms of the earlier agreement to the detriment of SouthTrust's subordinated interests on legal and equitable grounds, and which gave SouthTrust standing to contest any violation of the subordination agreement by the new agreement on legal or equitable grounds, if such agreement, in fact, ever came into legal existence. OCGA § 9-2-20 (b); see *Whitley v. Bryant*, 198 Ga. 328, 336-337 (31 SE2d 701) (1944); *Harris v. Jos. B. English Co.*, 83 Ga. App. 281, 282 (63 SE2d 346) (1951).

"The tortfeasor must be a 'stranger' to the business relationship at issue; a party, under appropriate circumstances, can be a non-signer of a particular contract and yet not be a stranger to the contract itself or to the business relationship giving rise thereto and underpinning it. See *Lake Tightsqueeze v. Chrysler First Financial Svcs. Corp.*, 210 Ga. App. 178, 181 (4) (435 SE2d 486) [(1993)]; *Jefferson-Pilot &c. Co. v. Phoenix City Broadcasting &c.*, 205 Ga. App. 57, 61 (1) (421 SE2d 295) [(1992)]." *Renden v. Liberty Real Estate &c.*, supra at 336. In the case sub judice, appellee had been negotiating with appellant and M.O.D.E., Inc., to come to an asset work-out agreement, which would have protected all the parties' security interests, when appellant unilaterally abandoned such efforts in order to prefer its own interests over appellee, regardless of the subordination agreement and appellee's security interest in the commingled assets. Appellee was no stranger to the underlying transactions, i.e., "agreement with M.O.D.E., Inc.," but had been an essential party thereto.

Further, appellant has failed to show that the statement was improper. The persons who heard the alleged "tortious statement" and the person who made the alleged "tortious statement" deny that the words alleged by appellant were ever spoken. Therefore, the improper "threat" has not been proven and there exists no probative and admissible evidence of the alleged "tortious statement." The suit has been based entirely upon double or triple hearsay: a statement made by appellee's counsel to Mr. Warne's counsel, who then told Mr. Warne; Mr. Warne, upon advice of counsel, then refused to go forward with appellant's agreement based upon what Mr. Warne was told was said; what Mr. Warne's counsel told appellant's counsel what Mr. Warne said; the statement of appellee's now was republished with interpretation, editorialization, and comment by the original recipient, Mr. Warne's counsel, who now denies ever having republished the statement in the "tortious statement" form; and the alleged "tortious statement" related by appellant's counsel. All of the weaknesses of hearsay evidence are present; hearsay cannot establish any essential element of the "tortious statement," because appellant's counsel's testimony regarding the original statement of appellee's counsel was not made in her presence and lacks probative value, since it is hearsay. See *Southern Business Machines v. Norwest Financial Leasing Co.*, supra at 256; *Skinner v. Humble Oil &c. Co.*, 145 Ga. App. 372, 374 (243 SE2d 732) (1978). Further, in the face of the affidavits of Gregory D. Ellis and B. Knox Dobbins who both deny that the alleged statement was ever made, appellant has failed to carry the shifted burden to show that there exists a material dispute as to such essential element of the theories of recovery. See *Lau's Corp. v. Haskins*, supra.

Appellant confuses proof of the first element, wrongful interference, with proof of causation, i.e., why Mr. Warne backed out of the agreement. OCGA § 24-3-2 (course of conduct or state of mind) can be used to place into evidence the alleged "tortious statement" as testified to by appellant's counsel in order to explain Mr. Warne's state of mind and why he acted as he did; however, such evidence cannot also serve to prove the "tortious" nature of the statement; that such "tortious statement" was, in fact, made; or that it was spoken using such language. The admissibility of evidence to prove conduct or state of mind is admitted for the limited purpose of explaining conduct or state of mind only and remains hearsay for purposes of proof as to any essential element of the cause of action. *Bundrage v. State*, 265 Ga. 813, 814 (2) (462 SE2d 719) (1995); *Momon v. State*, 249 Ga. 865 (294 SE2d 482) (1982); *Echols v. State*, 174 Ga. App. 829, 830 (1) (331 SE2d 619) (1985); *Davis v. State*, 168 Ga. App. 272, 274 (4) (308 SE2d 602) (1983); *Thompson v. Thompson*, 153 Ga. App. 80 (264 SE2d 558) (1980); *Clayton County Bd. of Ed. v. Hooper*, 128 Ga. App. 817 (198

SE2d 373) (1973); *Liberty Mut. Ins. Co. v. Meeks*, 81 Ga. App. 800 (60 SE2d 258) (1950). Therefore, appellant failed to prove an essential element, the tortious statement that served as an impermissible interference with the contract or business relationship.

B. The second element, malice, falls as well. "The term 'malicious' or 'maliciously' means any unauthorized interference, or any interference without legal justification or excuse. Personal ill will or animosity is not essential." (Citations and punctuation omitted.) *Arford v. Blalock*, supra at 441; see also *Valdez v. Power Indus. Consultants*, supra at 447; *Forehand v. Perlis Realty Co.*, 198 Ga. App. 165, 166 (400 SE2d 644) (1990). Appellee had legal justification because: the assets of the four corporations had been commingled so that appellee's security agreement would be impaired by the transfer; the appellee would not be protected in any sale that produced a surplus; the transfer, without consideration to M.O.D.E., Inc. to benefit Mr. Warne appeared to be a preference; any sale to Impact apparently was intended to wrongfully avoid and impair appellee's security interest and the subordination agreement; and any surrender of all the assets rendered the corporations insolvent. Therefore, there was no malicious intent shown.

C. Since the appellee pierced the pleadings on one or more essential elements of appellant's theories of liability, then the burden of proof shifted to appellant to come forward with evidence to create a dispute as to material fact, which appellant has failed to do as to the foregoing essential elements. Therefore, as a matter of law, appellee was entitled to the grant of summary judgment, and the remaining issues as to other elements of the theory of liability are moot. *Lau's Corp. v. Haskins*, supra at 493-494.

2. Appellant's second enumeration of error is that the trial court erred in refusing to consider and to rule on appellant's motion to compel under Uniform Superior Court Rule 5.1, prior to ruling on appellee's motion for summary judgment.

When faced with a motion for summary judgment and the unavailability of evidence to rebut such motion, OCGA § 9-11-56 (f) provides, "[s]hould it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavits facts essential to justify his opposition, the court may refuse the application for judgment, or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had, or may make such other order as is just." See *Kiker v. Pinson*, 120 Ga. App. 784 (172 SE2d 333) (1969). "If appellant needed additional discovery so as to make a response to appellee's motion, [it] should have invoked OCGA § 9-11-56 (f) rather than make [a request for extension of discovery under Uniform Superior Court Rule 5.1 which does not provide for a continuance of the motion for summary

judgment]." *Thompson v. Tom Harvey Ford Mercury,* 193 Ga. App. 64 (387 SE2d 28) (1989). Appellant failed to file the appropriate motion for continuance.

However, even if we treat appellant's motion as one under OCGA § 9-11-56 (f), which requires appellant to set forth the reasons for a continuance and to show that if the motion to compel were successful, then what relevant and material evidence would be produced in opposition to the motion for summary judgment, such deposition questions were prohibited by the attorney-client privilege. Appellant failed to make a proper showing to the trial court to constitute a meritorious motion.

The granting or denial of a motion under OCGA § 9-11-56 (f) lies in the sound discretion of the trial judge and will not be reversed absent a showing of clear abuse of discretion. *Wilson v. Tara Ford,* 200 Ga. App. 98, 101-102 (3) (406 SE2d 807) (1991); *Hall v. Scott USA,* 198 Ga. App. 197, 201-202 (3) (400 SE2d 700) (1990); *Gray v. Gober,* 185 Ga. App. 624, 627-628 (2) (365 SE2d 279) (1988); *Herring v. R. L. Mathis &c. Co.,* 121 Ga. App. 373, 377 (2) (173 SE2d 716) (1970).

Under the common law of Georgia, as codified in OCGA §§ 24-9-21 (2), 24-9-24, and 24-9-25, the attorney-client privilege bars revelation, discovery, and testimony of a lawyer except when waived by the client or in very limited circumstances. *Buffington v. McClelland,* 130 Ga. App. 460 (203 SE2d 575) (1973). These prohibitions are not a matter of legal ethics under the Code of Professional Responsibility (238 Ga. 747-832; 241 Ga. 651-743; 249 Ga. 889-902; 252 Ga. 581-655), but are the mandates of the common law of Georgia as an expression of public policy, which the lawyer has no power to waive. *Southern Guaranty Ins. Co. v. Ash,* 192 Ga. App. 24 (383 SE2d 579) (1989); *Associated Grocers Cooperative v. Trust Co. of Columbus,* 158 Ga. App. 115 (279 SE2d 248) (1981); *Marriott Corp. v. American Academy of Psychotherapists,* 157 Ga. App. 497 (277 SE2d 785) (1981); *Atlantic Coast Line R. v. Daugherty,* 111 Ga. App. 144 (141 SE2d 112) (1965). The trial court did not abuse its discretion in not ruling on the motion to compel discovery prior to ruling on the motion for summary judgment, because the questions sought to clearly invade the attorney-client privilege. Further, there was no proffer of proof that would show to the trial court and this Court the relevance, materiality, and admissibility of the answers in opposition to the motion for summary judgment had such answers been compelled; appellant has failed to show any harm.

*Case No. A97A1382*

3. Appellant's second appeal and enumerations of error are the

same as Divisions 1 and 2 herein and are governed thereby.

*Judgment affirmed. Birdsong, P. J., concurs. Ruffin, J., concurs in judgment only.*

DECIDED JUNE 18, 1997 — ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮ Before Judge Etheridge.

*Wilson, Strickland & Benson, Mary M. Brockington, Fred R. Slotkin, Jr., Sara L. Doyle*, for appellant.

*Sutherland, Asbill & Brennan, Steven L. Polk*, for appellee.