A00A0353. GRIFFIN et al. v. ASSOCIATED PAYPHONE.

(534 SE2d 540)

ELLINGTON, Judge.

Associated Payphone, a general partnership, sued Ray's All American Food Store, Inc. and its president, Marvin R. Griffin, for breach of contract and Ultra Telecom, Inc. and its president, Nick Damani, for tortious interference with contractual relations. The trial court entered judgment on the jury verdict against Griffin, for contract damages and attorney fees, and against Damani and Ultra, for tort damages, attorney fees and punitive damages. Following the denial of their motions for new trial, all four defendants appeal, assigning error to the trial court's denial of their motions for directed verdict, the form of the verdict, the charge on the law, and the admission of certain evidence. For the following reasons, we affirm.

1. The appellants contend the trial court erred in denying the motions for directed verdict of the two individual defendants, Griffin and Damani.

> A directed verdict is proper only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. OCGA § 9-11-50 (a). In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the any evidence test.

(Citation and punctuation omitted.) *Evans Timber Co. v. Central of Ga. R. Co.*, 239 Ga. App. 262 (1) (519 SE2d 706) (1999).

Viewed in this light, the evidence at trial showed that Ray's operated an Amoco station and convenience store at 3819 Jonesboro Road in Atlanta. On December 17, 1992, Associated obtained a contract giving it the exclusive right to install and maintain coin-operated telephones at Ray's store for a ten-year term. Associated agreed to pay Ray's the greater of $300 per month or half of the net receipts from the telephones. Griffin signed the contract following the designation "Proprietor" and directly above Ray's corporate name. There is no indication near his signature of Griffin's office or

position in the corporation.[1] Less than three years later, Associated removed its telephones because Griffin was in the process of demolishing the building and grading the property to build a larger convenience and package store on the site.

More than two years passed before the new store was ready. In early October 1997, Associated's principal, Don Malcolm, and Griffin discussed installing payphones in the new store. Griffin told Malcolm he wanted to increase the monthly minimum. A few days later, Malcolm learned that Ultra was competing for the payphone contract at Ray's. Griffin asked Malcolm if Associated would match the $3,000 signing bonus Ultra offered. At first, Malcolm agreed, but when the Ultra representative raised the bid, Malcolm contacted Damani at Ultra and told him that he had the payphone contract at Ray's. Damani asked for a copy of the contract and indicated that Ultra would not interfere with a valid contract. Malcolm called Griffin again and offered $6,000, but the Ultra representative immediately increased the bid to $6,500. Malcolm refused to match Ultra's offer. Malcolm testified that at that point he insisted that Ray's abide by the 1992 contract, but Griffin did not recall that. Griffin sent Malcolm a letter stating that the contract was terminated when Associated removed its payphones in 1995 and instructing Malcolm not to install payphones at the 3819 Jonesboro Road store. Ray's entered a contract with Ultra dated the day after Griffin's letter to Malcolm.

(a) The appellants contend Griffin's motion for directed verdict should have been granted because he was not a party to the contract allegedly breached. As the trial court correctly determined, the contract itself was ambiguous as to the capacity in which Griffin signed the 1992 contract with Associated: his signature appeared above the name of the allegedly represented party (Ray's) but failed to reflect his office in that entity (president) or otherwise show that he was signing in a representative capacity. See *Hartkopf v. Heinrich Ad. Berkemann*, 200 Ga. App. 355, 356 (1) (408 SE2d 450) (1991) (discussing former OCGA § 11-3-403). Although Griffin might have intended to sign the contract in his representative capacity only, he failed to limit his personal liability under the contract by showing his corporate office when he signed. *Talmadge v. Respess*, 224 Ga. App. 768, 770 (2) (482 SE2d 709) (1997). Evidence supporting the jury's finding that Griffin was a party included: the contract term designating Griffin "doing business as Ray's All American Food Store" as "proprietor"; the contract term certifying that Griffin owned the business; and Malcolm's testimony that he understood the contract was with

---

[1] The contract also included a certification by "the proprietor" that he owned the business at 3819 Jonesboro Road.

Griffin personally. Because there was some evidence from which the jury could conclude that Griffin signed the contract in his individual capacity, and not as an agent for Ray's, the trial court did not err in denying Griffin's motion for directed verdict. *Schroeder v. Hunter Douglas, Inc.*, 172 Ga. App. 897, 901 (9) (324 SE2d 746) (1984).

(b) The appellants contend Associated failed to make out a prima facie case for tortious interference against Damani. To establish liability for this tort, the plaintiff must prove that the defendant (i) acted improperly and without privilege; (ii) acted purposefully and maliciously with the intent to injure; (iii) induced a third party to breach a contract with the plaintiff; and (iv) caused the plaintiff some financial injury. *NationsBank, N.A. v. SouthTrust Bank &c.*, 226 Ga. App. 888, 892 (1) (487 SE2d 701) (1997). There was evidence before the jury that Damani knew Associated had an exclusive payphone operator contract with Ray's and directed Ultra's representative to offer Griffin whatever signing bonus was required to induce Griffin to give Ray's business to Ultra. The any evidence standard of review for the denial of the motion for directed verdict requires the affirmance of the trial court. *Witty v. McNeal Agency*, 239 Ga. App. 554, 561-562 (4) (521 SE2d 619) (1999).

2. Three of the appellants' enumerations relate to certain procedural irregularities at trial with regard to the form of the verdict. At the trial on Associated's claims, the trial court sent the jury to deliberate with a verdict form which had twelve separate parts: a finding for or against each of the four defendants as to three elements of recovery (compensatory damages, attorney fees, and punitive damages). The defendants objected to the verdict form and stated as follows: "after all these subparts, the defense submits there ought to be a clause . . . that simply says, we, the jury, find for defendants. . . . This is heavy loaded plaintiff's damages." The jury initially returned a verdict for Associated and against the two individuals for compensatory damages (breach of contract against Griffin, tortious interference against Damani) and attorney fees. The jury did not award punitive damages against the individuals. As to the two corporations, the jury found "for the plaintiff" on compensatory damages and attorney fees, but in the amount of $0. The jury awarded punitive damages against the corporations, leaving the amount to be determined after the second phase of the trial. The trial court rejected the verdict and instructed the jury that it could not award punitive damages unless it first awarded breach of contract damages, then amended that to be compensatory damages, either breach of contract or tortious interference, depending on the claim asserted against that party.

The jury returned a second verdict substantially similar to the first but which apportioned the original breach of contract damages

between Griffin and Ray's and apportioned the original tortious interference damages between Damani and Ultra. While the jury deliberated on the amount of punitive damages, Associated's lawyer pointed out that punitive damages are not available on breach of contract claims. See OCGA § 51-12-5.1 (b). The trial court admitted the error and instructed the jury that it would be calculating punitive damages against Ultra only. The trial court later realized that its error in charging the jury that punitive damages could be awarded only if they first awarded breach of contract damages had apparently induced the jury to award the plaintiff breach of contract damages against Ray's where it had originally decided not to award compensatory damages against Ray's. The trial court suggested that if Associated would give up its claim against Ray's, the verdict could be allowed to stand. Associated agreed, and the trial court entered judgment on the jury's verdict as to Griffin, Damani and Ultra, noting Associated had "waived and relinquished" its claim against Ray's.

(a) The appellants contend the verdict form misled and confused the jury by allowing the jury to find a breach of contract separately against Griffin and Ray's when only one of them could have been a party to the agreement. By failing to object on this basis, the appellants failed to preserve this alleged error for our review. *Brannan Auto Parts v. Raymark Indus.*, 183 Ga. App. 82, 83 (1) (357 SE2d 807) (1987) (comment that proposed verdict form was "loaded up against the defendants" was not sufficiently specific and therefore waived objection that form allowed for inconsistent verdict). Furthermore, as discussed in Division 1 (a), the evidence supported the jury's finding that Associated had a contractual relationship with Griffin. As to Ray's, the prejudicial effect of any error was cured by Associated's agreement to relinquish all claims against Ray's. We will not reverse on the basis of an error which caused no harm. *Thompson v. Crouch Contracting Co.*, 164 Ga. App. 532, 533 (2) (297 SE2d 524) (1982).

(b) The appellants contend the verdict form misled and confused the jury by allowing it to award damages separately against Damani and Ultra when they could be held liable only for tortious interference jointly and severally. Again, by failing to object on this basis, the appellants failed to preserve this alleged error for our review. *Brannan Auto Parts*, 183 Ga. App. at 83 (1).

(c) The appellants contend the trial court erred in recharging the jury after the jury returned an improper verdict. But where the jury returns an inconsistent and void verdict, it is proper for the trial judge to refuse to receive the verdict and to require the jury to return for further deliberations under proper instructions. *Zurich American Ins. Co. v. Bruce*, 193 Ga. App. 804, 805 (1) (388 SE2d 923) (1989). This enumeration is without merit.

3. The appellants contend the trial court erred in admitting

plaintiff's Exhibit 26, a chart showing Associated's calculations of the profit it would have made at the Ray's location for the 60 months remaining on the contract after Ray's breached the agreement. The defendants objected on the basis that the document had not been produced in response to their discovery requests and was provided to them only on the morning of the trial. The defendants did not request a continuance to investigate the contents of the document or to prepare a cross-examination, and the trial court gave the defendants an opportunity to review the document. The record is undisputed that the document was created shortly before it was tendered; therefore, Associated did not deliberately withhold the document during discovery but rather produced it at the earliest opportunity. The trial court did not abuse its discretion in admitting the document. *Wilson v. Southern R. Co.*, 208 Ga. App. 598, 603 (3) (431 SE2d 383) (1993).

4. The appellants contend the trial court erred in charging the jury on novation. Associated requested the charge to dispel the suggestion that Malcolm's conversation with Griffin about changing the terms of their agreement supported the defendants' position that there had been a mutual departure from the 1992 contract. We find no basis for concluding that the superfluous charge on novation contributed, either positively or negatively, to the jury's deliberations. Therefore, reversible error has not been shown. *Bynum v. Standard (Chevron) Oil Co.*, 157 Ga. App. 819, 821-822 (4) (278 SE2d 669) (1981).

*Judgment affirmed. Ruffin, J., concurs. Andrews, P. J., concurs in the judgment only.*

DECIDED MAY 10, 2000 —
RECONSIDERATION DENIED MAY 25, 2000 ▮▮▮▮▮▮▮

*Greene, Buckley, Jones & McQueen, Francis C. Schenck, Daniel A. Angelo, William D. Matthews, Louis T. Cain, Jr.,* for appellants.
*Evans & Bell, Mark G. Evans, S. Bradley Shipe,* for appellee.