A03A0014. WALDECK et al. v. CURTIS 1000, INC.
(583 SE2d 266)

JOHNSON, Presiding Judge.

This appeal involves the enforceability of a restrictive covenant contained in an employment agreement. Kevin Waldeck and his current employer, Data Systems, Inc. ("DSI"), appeal from the grant of interlocutory relief to Waldeck's former employer, Curtis 1000, Inc.

Waldeck worked as a sales representative for Curtis 1000, a business stationery and office supplies distributor. Waldeck was assigned a sales territory in the Columbus, Georgia area. During his employment at Curtis 1000, Waldeck signed an agreement which contained several restrictions on his post-employment activities. Under the terms of the contract, Waldeck agreed not to work in certain capacities in the Columbus, Georgia area for two years after leaving his employment with Curtis 1000. The nonsolicitation covenant provides in pertinent part:

> C. The Sales Representative agrees that he will *not*, in the territory and with respect to the Accounts assigned to him, during the Relevant Time Period . . . (ii) actually effect the sale to any Customer Account of, or accept any offer from any Customer Account for, any product that is one of the Company's Products or that is substantially similar to or competitive with any of the Company's Products.

(Emphasis supplied.)

The term "territory" is defined in the agreement as "COLUMBUS, GEORGIA TERRITORY # 315 AS DESCRIBED IN EXHIBIT 'A.'" Exhibit A lists 26 Georgia counties and two Alabama counties. "Customer Account" is defined as "any person, partnership, corporation or other entity who purchased the Company's Products through or from the Sales Representative within the two year period preceding the Relevant Time Period." "Relevant Time Period" means "the period of time beginning on the day on which the Sales Representa-

tive's employment with the Company terminated and running through the 730th day thereafter."

After seventeen years at Curtis 1000, Waldeck resigned his position and immediately went to work for DSI, one of Curtis 1000's competitors. Since DSI was in one of the proscribed counties, Curtis 1000 sued Waldeck and DSI for damages and injunctive relief, claiming breach of contract, unfair competition, tortious interference with contract, and misappropriation of trade secrets. Waldeck and DSI challenged, among other things, the enforceability of the restrictive covenant.

The trial court granted Curtis 1000's motion for interlocutory injunction, enjoining Waldeck

> from soliciting, calling upon, communicating with, or assisting others in doing so, any of his former Customer Accounts with Curtis 1000, meaning any customer who purchased Curtis 1000 products through or from Waldeck during the two years preceding Waldeck's separation from employment at Curtis 1000 . . . except those Curtis 1000 clients who have indicated that they are no longer interested in doing business with Curtis 1000.

Waldeck and DSI (collectively Waldeck) contend that the trial court erred in granting the interlocutory injunction. We agree and reverse.

The purpose of an interlocutory injunction is to preserve the status quo pending a final adjudication of the case, and in determining whether to preserve the status quo, a trial court must balance the conveniences of the parties pending the final adjudication, with consideration being given to whether greater harm might come from granting the injunction or denying it.[1] Although a trial court has broad discretion in deciding whether to grant or deny an interlocutory injunction, the trial court's discretion can be ultimately circumscribed by the applicable rules of law.[2] The question presented here is one of law, so the principle that the grant of the injunction rests in the sound legal discretion of the trial court has no application, and we owe no deference to the trial court's conclusions of law.[3]

A restrictive covenant in an employment agreement is in partial restraint of trade and will be enforced only if the restraint imposed is reasonable, is founded on a valuable consideration, is reasonably necessary to protect the interest of the party in whose favor it is

---

[1] *Univ. Health Svcs. v. Long*, 274 Ga. 829 (561 SE2d 77) (2002).
[2] Id. at 829-830.
[3] *City of McDonough v. Tusk Partners*, 268 Ga. 693, 697 (492 SE2d 206) (1997).

imposed, and does not unduly prejudice the interests of the public.[4] The reasonableness of a restraint is a question of law for determination by the court, which considers the nature and extent of the trade or business, the situation of the parties, and a three-element test of duration, territorial coverage, and scope of activity.[5]

Waldeck contends, among other things, that the prohibition against his "accept[ing] any order from any Customer Account" is unenforceable because it prohibits more than active solicitation or diversion of clients, and constitutes an unreasonable restraint of trade. We agree.

In this case, the provision prohibiting Waldeck from *accepting* orders from his former Curtis 1000 customers is unreasonable. While a prohibition involving some *affirmative* act on the part of the former employee, such as solicitation, diversion, or contact of clients, may be reasonable,[6] a covenant prohibiting a former employee from merely accepting business, without any solicitation, is not reasonable.[7] The nonsolicitation covenant in this case prohibits not only solicitation of Waldeck's former clients, but also the acceptance of business from unsolicited former clients, regardless of who initiated the contact. This is an unreasonable restraint because, in addition to overprotecting Curtis 1000's interests, it unreasonably impacts on Waldeck and on the public's ability to choose the business it prefers.[8]

We are not persuaded by Curtis 1000's arguments that *Bennett v. Ga. Indus. Catering Co.*,[9] *Coffee System of Atlanta v. Fox*,[10] and *Marcoin, Inc. v. Waldron*[11] require a contrary result. In *Bennett*, the issue was not whether accepting business from former customers amounted to solicitation, as prohibited by the nonsolicitation clause; it was whether the clause prohibiting, inter alia, soliciting or receiving continued patronage from former clients was void due to indefiniteness and vagueness.[12] In *Coffee System of Atlanta*, the question addressed appears to have been whether the nonsolicitation covenant was unreasonable because it could effectively prevent the former employee from accepting employment with a competitor, not

---

[4] *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465 (1) (422 SE2d 529) (1992).

[5] *Habif, Arogeti & Wynne, P.C. v. Baggett*, 231 Ga. App. 289 (498 SE2d 346) (1998); *Pregler v. C&Z, Inc.*, 259 Ga. App. 149, 150 (1) (575 SE2d 915) (2003).

[6] *Habif, Arogeti & Wynne*, supra at 298 (3) (c).

[7] *American Gen. Life &c. Ins. Co. v. Fisher*, 208 Ga. App. 282, 283-284 (1) (430 SE2d 166) (1993) (physical precedent only).

[8] See *Pregler*, supra at 150 (1); see also *W. R. Grace & Co.*, supra; *Singer v. Habif, Arogeti & Wynne, P.C.*, 250 Ga. 376, 377 (1) (297 SE2d 473) (1982); *Orkin Exterminating Co. v. Walker*, 251 Ga. 536, 539 (2) (b) (307 SE2d 914) (1983).

[9] 222 Ga. 127, 129-130 (149 SE2d 81) (1966).

[10] 226 Ga. 593, 596-597 (176 SE2d 71) (1970).

[11] 244 Ga. 169 (259 SE2d 433) (1979).

[12] *Bennett*, supra.

whether accepting business from former clients was a reasonable prohibition.[13]

Furthermore, the covenant in *Marcoin* did not include a prohibition against accepting business from former customers. Indeed, the Supreme Court held that the employee did not violate the nonsolicitation agreement by accepting business of former clients when there was no such prohibition specified in the agreement; solicitation, the Court held, requires affirmative actions on the employee's part. It was in dicta that the Supreme Court added that if an employer desires to prevent acceptance of business from former clients, it can include such language in the agreement.[14]

Moreover, the cases upon which Curtis 1000 relies were decided prior to those we rely upon here. In recent years, the law has become quite clear: solicitation requires some type of affirmative action; therefore, a nonsolicitation provision may not contain a bar on the acceptance of business from unsolicited clients.[15] Contrary to Curtis 1000's contention, this rule applies even where the no-acceptance covenant is purportedly limited to the former employee's customers.[16]

Because the above-quoted nonsolicitation clause is unenforceable, any other nonsolicitation covenant included in the agreement is likewise unenforceable. In restrictive covenant cases strictly scrutinized as employment contracts, Georgia does not employ the "blue pencil" doctrine of severability.[17] The trial court erred in granting the injunction based on the unenforceable nonsolicitation paragraph of the agreement.

*Judgment reversed. Eldridge and Mikell, JJ., concur.*

DECIDED JUNE 11, 2003.

*Raley & Sandifer, G. Brian Raley, John W. Sandifer,* for appellants.

*Ellis, Funk, Goldberg, Labovitz & Dokson, Robert N. Dokson,* for appellee.

---

[13] *Coffee System of Atlanta,* supra.

[14] *Marcoin,* supra at 171 (1).

[15] See, e.g., *Pregler,* supra; *Habif, Arogeti & Wynne,* supra at 295-296 (2) (c); *Akron Pest Control v. Radar Exterminating Co.,* 216 Ga. App. 495, 497 (455 SE2d 601) (1995); *Dougherty, McKinnon & Luby, P.C. v. Greenwald, Denzik & Davis, P.C.,* 213 Ga. App. 891, 894 (2) (b) (447 SE2d 94) (1994).

[16] See *Pregler,* supra; *Habif, Arogeti & Wynne,* supra.

[17] *Pregler,* supra; see *Riddle v. Geo-Hydro Engineers,* 254 Ga. App. 119, 121 (561 SE2d 456) (2002).