[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 09-11184

————————————————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 17, 2010
JOHN LEY
CLERK

D. C. Docket No. 06-01328-CV-CAP-1

H&R BLOCK EASTERN ENTERPRISES, INC.,

Plaintiff
Counter-Defendant
Appellant
Cross-Appellee,

versus

VICKI D. MORRIS,

Defendant
Counter-Claimant
Appellee
Cross-Appellant.

————————————————

Appeals from the United States District Court
for the Northern District of Georgia

————————————————

(May 17, 2010)

Before BLACK, MARCUS and HIGGINBOTHAM,[*] Circuit Judges.

PER CURIAM:

---

[*] Honorable Patrick E. Higginbotham, United States Circuit Judge for the Fifth Circuit, sitting by designation.

This case arises from an employment agreement entered into between Vicki D. Morris, a tax professional, and H&R Block Eastern Enterprises, Inc. (Block), her former employer. The employment agreement included a non-competition covenant and a non-solicitation covenant. After Block informed her she was ineligible for rehire, Morris started Dreams Tax Service, Inc. (Dreams) and personally prepared returns for 47 former Block clients. Block filed suit against Morris, claiming she violated the terms of her employment agreement by soliciting Block's clients, providing tax-preparation services to Block's former clients, and soliciting and hiring Block's employees.

The district court denied Block's motion for summary judgment for breach of the employment agreement and held the non-competition covenant in the agreement was unenforceable under Georgia public policy, thus rendering the entire agreement unenforceable. Because there were no further issues to resolve with regard to Block's breach of contract claim, the district court entered judgment in favor of Morris. The district court granted Block's motion for summary judgment on Morris's counterclaims, which alleged (1) Block wrongfully terminated her, (2) Block interfered with her business relations, (3) Block breached its implied contract to hire her, (4) Block discriminated against her in violation of Title VII, and (5) Block defamed her. On appeal, Block contends the district court

2

erred by concluding the restrictive covenants in the employment agreement were unenforceable under Georgia law. Morris, proceeding *pro se*, cross-appeals the district court's grant of summary judgment in favor of Block on her counterclaims.[1]

## I. BACKGROUND

Block provides tax preparation and related services for individuals and companies nationwide. Block employed Morris as a seasonal tax preparer in its office at 5195 Old National Highway, College Park, Georgia, for the 2000-2005 tax seasons. Each of Morris's periods of employment was governed by a separate employment agreement. On or about November 15, 2004, Morris entered into an employment agreement (Agreement) with Block for the 2005 tax season. The Agreement contained restrictive covenants, including a non-competition covenant and a non-solicitation covenant.

Section 11(a) of the Agreement sets out the non-competition covenant, which states, for a period of two years following the expiration of the Agreement, or the resignation or termination of the employee:

> Associate shall not, directly or indirectly, provide any of the following
> services to any of the Company's Clients: (i) prepare tax returns,
> (ii) file tax returns electronically, or (iii) provide any alternative or

---

[1] We construe *pro se* pleadings liberally. *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007).

additional service or product that Associate provided or offered as an employee of the Company. . . . The restrictions contained in Section 11(a) are limited to (i) Associate's district of employment, and (ii) a twenty-five (25) mile radius as measured from the office to which Associate is assigned . . . .

Agreement, § 11(a). The Agreement defines "Company Clients" as "(i) every person or entity with whom Associate had contact because Associate prepared or electronically transmitted their federal or state tax return during the term of this Agreement, and (ii) every person or entity with whom Associate had contact because Associate provided or offered additional or alternative services or products to such person or entity as an employee of the Company during the term of this Agreement." Agreement, § 11(a).

Section 11(b) of the Agreement sets out the non-solicitation covenant, which states, for a period of two years following the expiration of the Agreement, or the resignation or termination of the employee:

Associate shall not, directly or indirectly, solicit or attempt to solicit any of the Company's clients for the purpose of providing (i) tax return preparation, (ii) electronic filing of tax returns, or (iii) any alternative or additional service or product that Associate provided or offered as an employee of Company.

Agreement, § 11(b).

On or after October 31, 2005, Morris received a generic letter from Block addressed "Dear Associate." The letter welcomed Morris back to Block and

invited her to attend an orientation for the 2006 tax season. On November 16, 2005, Morris attempted to attend the orientation but was prevented from doing so by Brenda Shirley, one of Block's office managers. Morris claims Shirley loudly berated her before escorting Morris out of the building. The next day, Morris received a phone call from KaSondra Smith, the Block manager in charge of the district in which Morris had worked. Smith informed Morris that Block was performing an internal audit of tax returns prepared by Morris. Morris subsequently received a letter from Smith notifying Morris she was not eligible for rehire until the audit process was complete. Finally, in December of 2005, Block informed Morris she was ineligible for rehire.

In January of 2006, Morris started Dreams. Dreams' office was located approximately 13.3 miles from the Block office. During the 2006 tax season, Morris's family members, friends, and former Block clients came to Dreams to have their tax returns prepared. Dreams prepared tax returns for 87 former Block clients, although Morris personally prepared only 47 of those returns. Morris claims she did not solicit the business of the former Block clients, directly or indirectly.

On June 2, 2006, Block filed suit against Morris, claiming, *inter alia*, she violated the terms of her employment agreement by (1) soliciting Block's clients

5

for the purpose of providing tax-preparation services, (2) providing tax-preparation services for former Block clients, and (3) soliciting and hiring Block's employees. Block sought damages, injunctive relief, interest, costs, and fees.

In response, Morris filed an answer and a counterclaim. In her counterclaim, Morris alleged (1) Block wrongfully terminated her, (2) Block interfered with her business relations, (3) Block breached its implied contract to hire her, (4) Block discriminated against her in violation of Title VII, and (5) Block defamed her.

On November 7, 2006, Block filed a motion for a preliminary injunction. After a hearing on December 22, the district court granted in part and denied in part Block's motion for a preliminary injunction. Ruling the non-competition and non-solicitation covenants in Morris's employment contract were reasonably limited, the district court enjoined Morris from violating them.

On July 7, 2008, Block filed motions for summary judgment on its claims and on Morris's counterclaims. On January 6, 2009, the district court granted summary judgment in favor of Block on Morris's counterclaims, but denied Block's motion for summary judgment on its breach of contract claim. The district court decided the non-competition covenant was unenforceable because it prevented Morris from accepting unsolicited business from former clients, and thus invalidated the non-solicitation covenant as well. In light of those rulings, the

6

district court entered summary judgment in favor of Morris, but granted summary judgment to Block on all of Morris's counterclaims. This appeal and cross-appeal ensued.

## II. STANDARD OF REVIEW

The denial of a motion for summary judgment by a district court is reviewed *de novo*, applying the same standards the district court used. *Ortega v. Bibb County Sch. Dist.*, 397 F.3d 1321, 1324 (11th Cir. 2005). Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

The moving party bears the initial burden of showing there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 320-323, 106 S. Ct. 2548, 2553 (1986). Once the moving party has met its burden, the burden shifts to the non-moving party to "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotations omitted).

## III. DISCUSSION

A. *The Restrictive Covenants*

A restrictive covenant in an employment contract, whether a non-solicitation covenant or a non-competition covenant, is considered to be in partial restraint of

7

trade and will be enforced only if it (1) is reasonable, (2) is supported by consideration, (3) is reasonably necessary to protect the restraining party's interest, and (4) does not unduly prejudice the interests of the public. *W.R. Grace & Co. v. Mouyal*, 422 S.E.2d 529, 531 (Ga. 1992). Georgia courts apply strict scrutiny to restrictive covenants in employment contracts, and the reasonableness of the restraint is a question of law for determination by the court, "which considers the nature and extent of the trade or business, the situation of the parties, and all other circumstances." *Habif, Arogeti &Wynne, P.C. v. Baggett*, 498 S.E.2d 346, 349-50 (Ga. Ct. App. 1998) (quotations omitted). "A three-element test of duration, territorial coverage, and scope of activity has evolved as a helpful tool in examining the reasonableness of the particular factual setting to which it is applied." *Id.* at 351 (quotations omitted).

A restrictive covenant in an employment contract cannot be "blue-penciled" if it is found to be too broad. *Id.* at 349. Thus, if one non-competition or non-solicitation covenant in an employment agreement is too broad, any other covenants restricting competition or solicitation in the agreement will not be enforced either. *Advance Tech. Consultants, Inc. v. Roadtrac, LLC*, 551 S.E.2d 735, 737 (Ga. Ct. App. 2001).[2]

---

[2] This rule does not apply to non-solicitation of employees provisions. *See, e.g., Mathis v. Orkin Exterminating Co.*, 562 S.E.2d 213, 214 (Ga. Ct. App. 2002).

1. *The Non-Competition Covenant*

The district court determined the non-competition covenant was unenforceable because it prevented Morris from accepting unsolicited business from her former Block clients. In reaching this decision, the district court applied rulings involving non-solicitation covenants rather than non-competition covenants.[3]

On appeal, Block argues the district court erroneously concluded the non-competition covenant was invalid. Block contends the non-competition covenant is enforceable when evaluated under the proper standard and considering the interplay of provisions in the Agreement. In response, Morris argues the provision is unreasonable in geographic scope because it has two geographic restrictions–a district restriction and a 25-mile radius restriction. Morris also asserts the non-competition covenant contravenes public policy by limiting the number of businesses providing tax preparation and filing services.

---

[3] The district court relied on *Palmer & Cay, Inc. v. Marsh & McLennan Cos.*, 404 F.3d 1297, 1306 (11th Cir. 2005), for the proposition that non-competition agreements that prohibit the employee from accepting unsolicited business from former clients are unreasonable. *Palmer & Cay* concerned a non-solicitation covenant, not a non-competition covenant, and thus applied Georgia non-solicitation law to the provision at issue. Moreover, *Palmer & Cay* relied on two Georgia cases, *Waldeck v. Curtis 1000, Inc.*, 583 S.E.2d 266 (Ga. Ct. App. 2003), and *Singer v. Habif, Arogeti, and Wynne, P.C.*, 297 S.E.2d 473 (Ga. 1982), both of which concerned non-solicitation covenants, not non-competition covenants.

A non-competition covenant, "which is designed primarily to protect the employer's 'investment of time and money in developing the employee's skills,' prohibits the employee from performing competitive activities in a certain geographic area for a limited time." *Baggett*, 498 S.E.2d at 353 (quoting *Pierce v. Indus. Boiler Co.*, 315 S.E.2d 423, 24 (Ga. 1984)). A non-competition covenant "may preclude the employee from accepting related business (whether solicited or not) from any clients (whether previously contacted by him or not) if the employee is officed in, or is to perform the restricted activities in, the forbidden territory."[4] *Id.*[5]

A restrictive covenant subject to strict scrutiny may apply to the territory in which the employee served. *Id.* at 352. A non-competition covenant must also

---

[4] The covenant at issue in *Baggett* was not part of an employment contract, and was given intermediate scrutiny. *Baggett*, 498 S.E.2d at 350. However, *Baggett*'s description of a covenant not to compete concerned restrictive covenants in general and was not affected by the lesser degree of scrutiny.

[5] Likewise, in *Chaichimansour v. Pets Are People Too, No. 2, Inc.*, 485 S.E.2d 248, 250 (Ga. Ct. App. 1997), the Georgia Court of Appeals held valid a covenant not to compete precluding the employee from working as a veterinarian in a limited territory, even though such a restriction necessarily prevented the employee from accepting unsolicited business. In *Marcoin, Inc. v. Waldron*, the Georgia Supreme Court stated in dicta, "[i]f an employer wishes to prevent a former employee from [a]ccepting business from former clients of the employer such language can be made part of the covenant." 259 S.E.2d 433, 434 (Ga. 1979). In *Dougherty, McKinnon & Luby, P.C. v. Greenwald, Denzik & Davis, P.C.*, 447 S.E.2d 94, 96 (Ga. Ct. App. 1994), however, the Georgia Court of Appeals ruled a provision in an employment agreement was unenforceable because it prohibited "acceptance of any work from [former] clients regardless of who initiated the contact." (emphasis omitted). This case is distinguishable because the agreement at issue in *Dougherty* did not contain any geographic limitation, and it applied to all of the employer's clients, regardless of whether they had a business relationship with the employee. *Id.* at 96-97.

10

"contain a territorial limitation sufficient to 'give the employee notice of what constitutes a violation of the restrictive covenant [by] specify[ing] with particularity the territory in which the employee[s' conduct] is restricted.'" *Paramount Tax & Accounting, LLC v. H & R Block Eastern Enters., Inc.,* 683 S.E.2d 141, 146 (Ga. Ct. App. 2009) (emphasis omitted) (alterations in original). To determine whether a non-competition covenant satisfies this requirement, "a court must examine the 'interplay between the scope of the prohibited behavior and the territorial restriction.'" *Id.* For example, "[a] broad territorial limitation may be reasonable if the scope of the prohibited behavior is sufficiently narrow." *Beacon Sec. Tech. Inc. v. Beasley*, 648 S.E.2d 440, 442 (Ga. Ct. App. 2007).

Applying the three-element test of duration, territorial coverage, and scope, we conclude the Agreement's non-competition covenant is reasonable, considering the nature and extent of the business, the situation of the parties, and other relevant circumstances. *Baggett*, 498 S.E.2d at 350-51. With respect to duration, the two-year duration of the non-competition clause is within the time frame permitted by law. *See id.* at 351 ("A two-year duration is often considered reasonable even under the strict scrutiny for employment covenants not to compete."); *see also Smith v. HBT, Inc.*, 445 S.E.2d 315, 318 (Ga. Ct. App. 1994) (concluding a five-year covenant not to compete was reasonable with respect to duration).

11

With regard to territorial coverage, the non-competition covenant was geographically limited to (1) Morris's district of employment and (2) a 25-mile radius from the Block office where Morris worked. Agreement, § 11(a). The restricted geographic area was illustrated by a map accompanying the Agreement, and was thus identified and disclosed to Morris at the time she signed the contract. *Paramount*, 683 S.E.2d at 146 (requiring a sufficiently specific territorial limitation to give the employee notice of what constitutes a violation of the restrictive covenant). Although Morris contends the geographic restrictions are unreasonable, the district court found "Block [] presented evidence showing that Morris serviced clients from communities in the extreme outer-edges of the twenty-five mile territor[y]." Moreover, the geographic restrictions are reasonable considering the "interplay" between the territorial restriction and the scope of prohibited behavior–the covenant applies only to clients served by Morris, and only covers territory in which she actually worked.[6] Accordingly, in these circumstances, the non-competition covenant's territorial limitation is reasonable.

---

[6] This situation is distinguishable from *Paramount*, where the Georgia Court of Appeals concluded the non-competition covenant in the employment contract was unenforceable as a matter of law. 683 S.E.2d at 147. In *Paramount*, the restriction was not limited to clients served by the employee, and it failed to limit the conduct to a specific geographic area. *See id.* at 146 (noting the language prevented the employee from accepting employment anywhere in the United States "if her prospective employer engages in the preparation and electronic filing of tax returns and also either has an office or advertises in, or within ten miles of, Block's Gainesville District").

12

Finally, the scope of prohibited activities is sufficiently narrow. A non-competition covenant "must balance an employee's right to earn a living without unreasonable restrictions, and an employer's right to protection from the former employee's possible unfair appropriation of contacts developed while working for the employer." *Augusta Eye Ctr., P.C. v. Duplessie*, 506 S.E.2d 242, 245 (Ga. Ct. App. 1998). Here, the non-competition covenant prohibited Morris from preparing tax returns or providing any other service Morris "provided or offered as an employee of the Company" to any of the Company's Clients. Agreement, § 11(a). The Agreement limited Company Clients to those persons or entities "with whom [Morris] had contact" by providing services as an employee of the Company. *Id.* This covenant does not prohibit Morris from preparing taxes or providing a related service to the general public, or Block clients generally. Morris is only prohibited from serving those clients she serviced while employed at Block during the 2005 tax season. The covenant appropriately balances Morris's right to earn a living with Block's right to protect its customer relationships and Block's investment in developing Morris's skills.

The non-competition covenant is limited to a specific geographic area, the types of activities performed by Morris at Block, the customers serviced by Morris at Block, and a two-year duration. After considering the nature of the tax

13

preparation business, the situation of the parties, and after applying the three-element analysis, we conclude this non-competition covenant is reasonable under Georgia law.[7]  The district court erred by relying on non-solicitation case law to conclude otherwise.

2.  *The Non-Solicitation Covenant*

In light of its ruling invalidating the non-competition covenant, the district court refused to enforce the non-solicitation provision.  *See Advance Tech. Consultants, Inc.*, 551 S.E.2d at 737 (stating if one non-competition or non-solicitation of clients covenant in an employment agreement is too broad, any other covenants restricting competition or solicitation in the agreement will not be enforced either).  Because the non-competition covenant is enforceable, however, the non-solicitation covenant must be evaluated on its own merits.  *See Baggett*, 498 S.E.2d at 354.

On appeal, Block argues the non-solicitation clause is enforceable because it is reasonably limited with respect to duration, territory, and activity covered.

---

[7]  Moreover, the Agreement's non-competition covenant does not contravene Georgia public policy.  *See, e.g., Waldeck*, 583 S.E.2d at 268 (concluding a *non-solicitation* covenant was unreasonable because it overprotects the employer's interests and "unreasonably impacts on [the employee] and on the public's ability to choose the business it prefers").  The covenant at issue will limit Block's clients (that Morris served in 2005) from choosing to use Morris's services within her old district or a 25-mile radius from her old office.  However, Georgia courts specifically permit non-competition covenants that prohibit an employee from accepting unsolicited business from her former employer's clients if the restriction is limited to the territory in which the employee served.  *Baggett*, 489 S.E.2d at 351-52.

14

Morris contends Block has not produced any evidence she violated the non-solicitation clause. We only address the validity of the non-solicitation clause to determine whether paragraph 11 of the Agreement is enforceable.[8]

A non-solicitation covenant, "which is designed primarily to protect the employer's investment of time and money in developing customer relationships, prohibits an employee from soliciting the employer's clients for a limited time and only requires a territorial restriction if the forbidden clients include the clients with whom the employee did not have a relationship prior to his departure." *Baggett*, 498 S.E.2d at 353. A non-solicitation covenant "may not preclude the employee from accepting unsolicited business" from the employer's clients. *Id.*

The Agreement included a non-solicitation covenant with a two-year duration which prevented Morris from "directly or indirectly" soliciting or attempting to solicit any Company Clients for the purpose of offering, among other things, tax preparation services. Agreement, § 11(b). Company Clients are limited to those persons or entities "with whom [Morris] had contact" by providing services as an employee of the Company. Agreement, § 11(a).

This non-solicitation clause is enforceable because it is reasonable with respect to duration and activity covered, and it does not prohibit Morris from

---

[8] The issue of whether Morris breached the non-solicitation clause is not before this Court.

15

accepting unsolicited business. First, the two-year duration is reasonable under Georgia law. *See Palmer & Cay of Ga., Inc. v. Lockton Cos.*, 629 S.E.2d 800, 804 (Ga. 2006) (ruling a two-year restriction was reasonable). Second, the covenant at issue only applies to Block's clients whom Morris served during the 2005 tax season, so a geographic restriction is unnecessary. *See W.R. Grace & Co.*, 422 S.E.2d at 533 (if a non-solicitation covenant covers only the employer's customers "which the employee contacted during h[er] tenure with the employer, there is no need for a territorial restriction expressed in geographic terms"). Finally, the non-solicitation covenant is enforceable because it only prohibits Morris from initiating contact with the employer's clients for the purpose of providing the services that the employee performed for the employer. *Baggett*, 231 S.E.2d at 354-55. Accordingly, we conclude this non-solicitation covenant is reasonable under Georgia law.

In light of its ruling invalidating the non-competition covenant, the district court refused to enforce the non-solicitation provision and entered judgment in favor of Morris. This was error. Because both the non-competition and non-solicitation covenants are reasonable, the restrictive covenants in paragraph 11 of the Agreement are enforceable.

The district court found that Morris personally prepared tax returns for 47 former "Block clients" during the 2006 tax season. Morris concedes she accepted business from between 40 and 50 "Block clients." Morris provided tax services to those clients at Dreams, which is located less than 25 miles from Morris's former Block office. Thus, no genuine issues of material fact exist regarding Morris's violation of the non-competition covenant.

B. *Morris's Counter-claims*

1. *Wrongful Termination*

On cross appeal, Morris argues the district court erred in ruling Morris was not wrongfully terminated. She points to an October 31, 2005, letter from Block welcoming her back as evidence of an employment contract, and claims she suffered damages from Block's wrongful termination of her when a Block employee, Brenda Shirley, prevented her from attending a required orientation. In response, Block argues it never hired Morris for the 2006 tax season, and even if Block did hire Morris, her employment would have been at-will, permitting Block to terminate her employment for any reason.

Employment contracts are enforceable under Georgia law only if they include "[t]he nature and character of the services to be performed, the place of employment[,] and the amount of compensation to be paid." *Farr v. Barnes*

17

*Freight Lines, Inc.*, 101 S.E.2d 906, 907 (Ga. Ct. App. 1958). If any of these "essential elements" are omitted, "there is no agreement." *Id*. In the absence of an agreement, Georgia follows an "at-will" employment doctrine, which permits the employer to discharge the employee for any reason whatsoever, "without acquiring a cause of action for wrongful termination." *Nida v. Echols*, 31 F. Supp. 2d 1358, 1376 (N.D. Ga. 1998) (citing O.C.G.A. § 34-7-1).

The district court did not err by granting summary judgment because, even if Morris was hired for the 2006 tax season, no enforceable employment agreement governed the relationship. The October 31 letter does not include all of the required terms; specifically, the letter does not include the place of employment, the amount of compensation to be paid (or a method of calculating compensation), or the services to be performed, except very generally. *See* 10/31/05 Letter, R2-76-8, Ex.2. Moreover, the letter does not even address Morris by name—rather, it states "Dear Associate." *Id*. Accordingly, the letter did not create an enforceable contract, and because Georgia is an "at-will" state, Morris cannot assert a claim for wrongful termination.

2. *Breach of an Implied Contract*

As an alternative to her wrongful termination claim, Morris argues Block breached its implied contract to hire her by failing to employ her for the 2006 tax

season.   She points to the October 31 letter as evidence of the implied contract.   In response, Block argues because the October 31 letter does not contain the required elements, it cannot create an implied contract.

Implied contracts are not exempt from the rule requiring the identification of the services to be performed, the place of employment, and compensation.  *See, e.g., Burgess v. Decatur Fed. Sav. Assoc.*, 345 S.E.2d 45, 46 (Ga. Ct. App. 1986) (ruling, even if an implied contract had been created based on an employment manual, "it was clearly terminable at will because it failed to specify a period of employment").  Assuming, *arguendo*, the October 31 letter created an implied contract, "it was clearly terminable at will because it failed to specify a period of employment." *Id.*  Accordingly, Morris was terminable at will and has no cause of action for Block's decision to no longer employ her.

3.  *Tortious Interference with Business Relations*

Morris next argues Block employee Brenda Shirley prevented her from attending the orientation, and thus tortiously interfered with Morris and Block's business relations.  The district court correctly granted summary judgment on this claim because it is well-established under Georgia law a party cannot tortiously interfere with its own business relationships.  *See Taylor v. Calvary Baptist Temple*, 630 S.E.2d 604, 606 (Ga. Ct. App. 2006).

19

4. *Title VII*

Morris contends her Title VII claim is not time-barred because she filed her charge of discrimination with the EEOC within 180 days of the last employment action. She points to the "Dates Discrimination Took Place" in her right to sue letter, which listed June 14, 2006, as the last date of discriminatory conduct committed by Block.

Before suing under Title VII, a plaintiff must first exhaust her administrative remedies. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). To do so, a plaintiff must file a timely charge of discrimination with the EEOC within 180 days of the last discriminatory act. *Id.* Morris last worked in Block's offices in April or May of 2005, and she did not file an EEOC charge until November 16, 2006. Although Morris herself listed June 14, 2006, as the latest date of discrimination, she offers no evidence she was in a position to suffer discrimination by Block on that date. Accordingly, Morris failed to timely exhaust her administrative remedies.

5. *Defamation*

Finally, Morris asserts the district court erred by ruling Block did not defame her because Block employees Brenda Shirley and KaSondra Smith communicated defamatory statements about Morris to third parties that harmed her professional

reputation. Morris alleges the following statements were defamatory: (1) Shirley's oral statement to new tax preparers that Morris was an "evil witch who didn't know how to do taxes," (2) Shirley's insulting statement(s) when Morris attempted to attend Block's orientation on November 16, 2005, and (3) a written statement in a letter sent to Catherine Watson, a Block employee, "accusing Morris of taking improper tax deductions." In response, Block argues none of these statements support a claim for defamation because Morris has not produced any evidence showing Block directly or expressly authorized any of its employees to slander Morris, and the written statement was not published and was privileged.

In Georgia, a statement generally may support a claim for defamation only if it is false, published, and unprivileged, among other requirements. *See Saye v. Deloitte & Touche, LLP,* 670 S.E.2d 818, 821 (Ga. Ct. App. 2008). Statements about employees are afforded additional protection. First, an employer is not liable for a slanderous statement made by its employee unless the employee "was expressly directed or authorized to slander the plaintiff." *Lepard v. Robb*, 410 S.E.2d 160, 162 (Ga. Ct. App. 1991). An employer, can, however, be held liable if an agent libels another while acting within the scope of his employment. *Garren v. Southland Corp.*, 228 S.E.2d 870, 871 (Ga. 1976). Second, a statement made "in good faith in the performance of a legal or moral private duty" is privileged. *See*

21

O.C.G.A. § 51-5-7; *see also Lewis v. Meredith Corp.*, 667 S.E.2d 716, 719 (Ga. Ct. App. 2008) ("[S]tatements made during private, intra-corporate investigations conducted in good faith performance of a private duty are privileged and are not 'published' for purposes of a defamation claim."). Third, "a communication made by one corporate agent to another is not publication in the legal sense." *Kitchen Hardware, Ltd. v. Kuehne & Nagel, Inc.*, 421 S.E.2d 550, 553 (Ga. Ct. App. 1992).

Block cannot be held liable for the allegedly slanderous statements of its employees unless it affirmatively appears Block expressly directed or authorized its employees to slander Morris. *See Lepard*, 410 S.E.2d at 162. Morris has offered no evidence suggesting Block directed Shirley or any other employee to slander Morris, so no vicarious liability can be assigned to Block for the alleged oral statements. *See Fuhrman v. EDS Nanston*, *Inc.*, 483 S.E.2d 648, 649 (Ga. Ct. App. 1997). With regard to the alleged defamatory written statement, the letter was not "published" because it was not sent to a third party, and an intra-corporate communication to someone who clearly has reason to receive the information does not constitute a publication. *See Kitchen Hardware*, 421 S.E.2d at 553.

## IV. CONCLUSION

For the reasons stated above, we AFFIRM the district court's grant of summary judgment in favor of Block on Morris's counterclaims. We REVERSE

22

the district court's entry of judgment in favor of Morris and REMAND with instructions to enter summary judgment in favor of Block on the breach of contract claim.

**AFFIRMED in part, REVERSED and REMANDED in part.**