[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-10907
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 23, 2011
JOHN LEY
CLERK

D.C. Docket No. 3:07-cv-00111-JTC

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,

Plaintiff,

versus

DEAN D. CAIN, JR.,

Defendant-Appellee,

EVERETT J. CAIN, et. al.,

Defendants,

MARY JEAN CAIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 23, 2011)

Before CARNES, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Mary Jean Cain (Mary) appeals <u>pro</u> <u>se</u> the district court's grant of summary judgment in favor of Dean Cain, Jr. (Dean) in a diversity-based interpleader action filed by Hartford Life and Accident Insurance Company. Mary contends that she is the sole beneficiary of life insurance proceeds of her former spouse, Dean Cain, Sr. (Decedent).

I.

Mary and the Decedent were married on April 1, 1974. Together they had four children, first Dean, then Brandon, then Benjiman, then Daniel. Subsequently, however, Mary and the Decedent were divorced, with the "Final Judgement and Decree" entered by a Georgia superior court on March 22, 1999. Mary was awarded custody of their children and child support. The child support included the requirements that the Decedent pay Mary $1,000 per month per child, the Decedent maintain health insurance through his employer for the benefit of their minor children, the Decedent and Mary split the costs of their minor children's medical bills not covered by insurance, and that "[the Decedent] shall also maintain life insurance through his employer and shall designate Mary J. Cain as beneficiary for so long as he is liable for child support." Consistent with the

2

agreement, the Decedent had a life insurance policy that named Mary as the beneficiary.

Mary was not content with waiting for the Decedent to die naturally so that she could obtain his life insurance proceeds. In 2000, she, along with two of her sons—Brandon and Benjiman—and her boyfriend decided to kill the Decedent.[1] Their scheme, which was explained by a state trial court in the appeal of Mary's boyfriend, was as follows:

> Over a four-month period, [the boyfriend], Mary Jean Cain, and her
> sons, Brandon and [Benjiman] Cain, conspired to murder Dean Cain,
> Sr., the ex-husband of Mary Jean and father of Brandon and
> [Benjiman]. The plot to murder Mr. Cain originated with Mary Jean,
> the motive being to collect a $460,000 life insurance policy upon the
> victim's death. Various attempts to murder the victim proved
> unsuccessful. The conspirators first attempted to boil tobacco down
> to its poisonous form and place it in the victim's tea. Because the tea
> was undrinkable, this attempt failed. Next, the conspirators
> purchased a gun with the intent to shoot out the victim's tires and

---

[1] Dean submitted a "statement of material facts" to the district court. Mary did not respond to this filing. Therefore we accept Dean's "statement of material facts." See N.D. Ga. Civ. R. 56.1(B)(2)(a)(2).

3

cause a fatal wreck; however, this attempt also failed. The group then decided to push the victim out of his fishing boat, knowing that he could not swim. This effort was abandoned after ten days because too many people were present. Finally, the conspirators decided to murder the victim in his home and later dump his body in the river. In furtherance of the conspiracy, an aluminum baseball bat, mask and gloves were purchased. Again, this plan went awry. After Brandon brutally beat his father with the bat, he left the house and announced to [Benjiman] that the victim was dead. Upon their return to dispose of the body, they found the elder Cain still breathing. The two men dragged the victim outside where he was left lying in a parking lot because they were unable to get him into the truck. The next day, the victim's virtually naked and bleeding body was discovered. Although Mr. Cain survived, he suffers from serious, permanent, and disabling injuries.

Tennessee v. Robert Lee Fox, 2003 WL 21339252 (Tenn. Crim. App. June 10, 2003) (unpublished).[2] Mary, for her role in the crime, was charged with attempted

---

[2]Robert Lee Fox, and the scheme set forth in that case, are part of the record because that case was repeatedly referenced in Dean's undisputed "statement of material facts."

4

first degree murder and conspiracy to commit first degree murder. On February 12, 2002, Mary pled guilty to the conspiracy to commit first degree murder and was sentenced to twenty years in prison.

Following the attempted murder, but before Mary's guilty plea, the Superior Court of Henry County "vacated on a permanent basis" the "Child support awarded to [Mary] from [the Decedent]." And because Daniel was still a minor, the court awarded child support, in the amount of $1,000 per month, to his older brother Dean, who presumably had custody of Daniel and was caring for him.

On April 7, 2002, after Mary's child support was vacated and she pleaded guilty to conspiracy to commit first degree murder, the Decedent removed Mary as the beneficiary of his life insurance policy. The Decedent made Dean, his son who was also the recipient of the child support payments, the sole beneficiary of his life insurance policy. The terms of the policy permitted such a change. Almost five years later, on March 22, 2007, the Decedent died.

Mary, from prison, contends that she is entitled to the life insurance proceeds. She argues that the Decedent could not replace her as the beneficiary because the divorce decree stated that he "shall designate Mary J. Cain as beneficiary for so long as he is liable for child support." She argues that even though her child support award was vacated after she conspired to murder the

5

Decedent, he was not able to remove her as the beneficiary because he was still liable to pay child support to Dean. Dean disagrees. He argues that the Decedent was permitted to make him the beneficiary after Mary's child support was vacated. Both Mary and Dean filed motions for summary judgment. The district court granted Dean's motion and denied Mary's motion. Mary appealed.

## II.

"We review a district court's grant of summary judgment de novo." Skop v. City of Atlanta, GA, 485 F.3d 1130, 1136 (11th Cir. 2007). "Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Id. (quotation and alteration omitted). "In making this determination, we view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." Id. (quotation omitted). Additionally, "[w]e construe pro se pleadings liberally." H&R Block Eastern Enterprises, Inc. v. Morris, 606 F.3d 1285, 1288 n.1 (11th Cir. 2010).

Georgia law allows a child support award to include the requirement that a parent obtain and maintain life insurance. See O.C.G.A. § 19-6-34(a); Esser v. Esser, 277 S.E. 2d 627, 628 (Ga. 2003). Mary's child support award included

6

such a provision, which stated that "Dean D. Cain, Sr. shall also maintain life insurance through his employer and shall designate Mary J. Cain as beneficiary for so long as he is liable for child support." However, after Mary conspired to kill the Decedent the superior court "vacated on a permanent basis" the award of child support to her. The provision of the child support order requiring the Decedent to designate Mary as the beneficiary was also vacated; it would make no sense to ensure continued payments of child support payments with a life insurance policy payable to a woman who no longer had any role in those payments.

Therefore there is no issue of material fact because the Decedent was permitted to change the beneficiary on his life insurance policy from Mary to Dean, and the Decedent did so. See West v. Pollard, 43 S.E.2d 509, 511 (Ga. 1947).

**AFFIRMED.**