[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14351
Non-Argument Calendar

_____

D.C. Docket No. 1:13-cv-22187-WJZ

WEN LIU,

Plaintiff-Appellant,

versus

UNIVERSITY OF MIAMI SCHOOL OF MEDICINE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 19, 2017)

Before MARCUS, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Wen Liu, an Asian female of Chinese national origin, appeals pro se the

district court's grant of summary judgment in favor of  her former employer, the

University of Miami School of Medicine ("the University"), on her multiple

employment and discrimination claims.   On appeal, she argues that: (1) the district court erred by granting summary judgment on her race, sex, and national origin claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e ("Title VII"), 42 U.S.C. § 1981, and the Florida Civil Rights Act ("FCRA"); her retaliation claim under Title VII; and several claims under the Family Medical Leave Act ("FMLA"); and (2) the district court erred in denying her request for an extension of discovery.   After careful review, we affirm.

First, we are unpersuaded by Liu's claim that the district court erred by granting summary judgment as to her Title VII, FCRA, and § 1981 discrimination claims.   We review the grant of summary judgment de novo.   Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 (11th Cir. 2008).   A party abandons an issue by failing to raise the issue on appeal.   Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 680 (11th Cir. 2014).   When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, she is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed.   Id. at 680-83.

Summary judgment is rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   In making this assessment, we must view all evidence and all factual inferences reasonably drawn from the evidence in the light

2

most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the nonmovant. Rioux, 520 F.3d at 1274. In supporting or opposing summary judgment, a party must support all factual assertions through evidentiary material. Fed. R. Civ. P. 56(c)(1)(A). "Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment." Bald Mountain Park, Ltd. v. Oliver, 863 F.2d 1560, 1563 (11th Cir. 1989). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Thus, statements in an affidavit based, in part, upon information and belief -- instead of only knowledge -- cannot raise a genuine issue of fact. Pace v. Capobianco, 283 F.3d 1275, 1278 (11th Cir. 2002). Further, unsworn statements may not be considered in evaluating a summary judgment motion. Carr v. Tatangelo, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003).

We review subject matter jurisdiction questions de novo. Brown v. Snow, 440 F.3d 1259, 1262 (11th Cir. 2006). Before commencing a lawsuit under Title VII, a plaintiff must first exhaust administrative remedies. H&R Block E. Enters., Inc. v. Morris, 606 F.3d 1285, 1295 (11th Cir. 2010). A plaintiff's Title VII action is limited to the scope of the administrative investigation that "can reasonably be expected to grow out of the charge of discrimination." Gregory v. Ga. Dep't of

Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004) (quotation omitted).  The

failure of a party to check a box marked "retaliation" on the charge form does not

administratively foreclose a party from bringing suit based on that theory, if the

facts alleged in the charge could reasonably have extended to cover a retaliation

charge.  Id.  The purpose of the exhaustion requirement is "to give the agency the

information it needs to investigate and resolve the dispute between the employee

and the employer."  Brown, 440 F.3d at 1263 (quotations omitted).

A person must file a timely charge of discrimination as a prerequisite to

filing a Title VII suit.  Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir.

2001).  An EEOC charge is timely in a deferral state, like Florida, if filed within

300 days of the last discriminatory act.  42 U.S.C. § 2000e-5(e)(1); see Thomas v.

Fla. Power & Light Co., 764 F.2d 768, 769-70 (11th Cir. 1985).  Under the FCRA,

a plaintiff must file formal charges with the EEOC or a state commission within

365 days of the alleged FCRA violation.  Fla. Stat. § 760.11(1).  The applicable

period for filing an EEOC charge of discrimination begins to run when the

employee receives unequivocal notice of an adverse employment decision.

Stewart v. Booker T. Washington Ins., 232 F.3d 844, 849 (11th Cir. 2000).

"Title VII prohibits employers from discriminating 'against any individual

with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national origin.'"

4

McCann v. Tillman, 526 F.3d 1370, 1373 (11th Cir. 2008) (quoting 42 U.S.C. § 2000e-2(a)).  Claims of race discrimination arising under § 1981 have the same requirements of proof and use the same analytical framework as Title VII claims. Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1325 n.14 (11th Cir. 2011). Since the FCRA is patterned after Title VII, the same is true for FCRA claims. Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998).

In Title VII discrimination cases, the plaintiff may prove discrimination through circumstantial evidence, using the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  McCann, 526 F.3d at 1373.  The plaintiff may establish a prima facie case of discrimination by showing that (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to an adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably.  Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008).

"[I]f the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action."  Id. at 976 (quotation omitted).  "To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been

motivated by discriminatory animus." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997) (quotation, bracket and emphasis omitted).

"If the employer does this, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination." Crawford, 529 F.3d at 976. A reason is not a pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason. Brooks v. Cty. Com'n of Jefferson Cty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006). A plaintiff's evidence of a pretext must reveal the weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence. Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 771 (11th Cir. 2005). When the employer has presented evidence of poor performance, "an employee's assertions of his own good performance are insufficient to defeat summary judgment." Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997).

As for Liu's Title VII and FCRA claims, the district court correctly found that Liu failed to exhaust administrative remedies because the EEOC charge was not timely filed. Uncontested record evidence reveals that Liu received a letter from David Birnbach, the vice provost for faculty affairs, on October 7, 2011, that gave written, unequivocal notice that Liu's employment was terminated effective 12 months from that date. Liu also reported on her EEOC charge form that

6

October 7, 2011, the date she was given notice of her termination, was the last date discrimination took place.  Thus, the applicable period for filing an EEOC charge began to run on October 7, 2011.  Stewart, 232 F.3d 844.  Since Liu did not file her EEOC complaint until March 21, 2013, her complaint was filed well beyond the 365-day period for Title VII and the 300-day period for the FCRA, and was untimely.  42 U.S.C. § 2000e-5(e)(1); Fla. Stat. § 760.11(1); Thomas, 764 F.2d at 769-70.  Accordingly, Liu failed to exhaust administrative remedies and summary judgment was proper as to these two claims.  Crawford, 186 F.3d at 1326.[1]

Lui's § 1981 claim, however, does not carry an exhaustion requirement, so she did not need to exhaust it.  But even if Liu was able to make a prima facie case of discrimination, the University clearly articulated a legitimate, nondiscriminatory reason for Liu's change of track and termination -- her poor performance.  Crawford, 529 F.3d at 976.  As for Liu's switch from the tenure track to the research track, the University provided undisputed evidence that it followed protocol to determine that Liu was not making sufficient progress to remain on the tenure track.  Specifically, sworn declarations by Dr. Jose Szapocznik, the chairman of Liu's department, and Dr. Sheri Keitz, the senior associate dean of faculty affairs, as well as a faculty manual excerpt, supported that all tenure track

---

[1]    Liu also failed to exhaust her Title VII retaliation claim because her EEOC charge was untimely.  Thus, the district court properly granted summary judgment on her Title VII retaliation claim for the same reason.

faculty members were subject to an annual review to assess progress toward tenure, conducted by a committee of faculty members in her department. The evidence showed that at Liu's first annual evaluation in November 2009, of 15 faculty members eligible to vote: 0 rated her "scholarly productivity and/or creative achievement" as outstanding or meeting expectations; 6 rated it as marginal; 3 rated it as unsatisfactory; 2 abstained from the vote; and 3 were absent. The faculty committee also voted on her progress toward tenure, with 4 voting that she had made adequate progress, 5 voting that she had not, 3 abstaining, and 3 absent. The evidence further showed that Liu's performance declined even more in her second year as a professor on the tenure track. Specifically, the 15 eligible faculty members present at Liu's annual review in August 2010 unanimously voted that Liu had not made adequate progress toward tenure.

The University also provided undisputed evidence that Szapocznik's motivation for advising Liu to switch tracks was that Liu's past performance indicated that she would not be successful on the tenure track. Szapocznik said he encouraged Liu to switch to the research track because he believed this to be in her best interest based on her past performance. In addition, the evidence showed that the faculty committee had found that Liu had not made progress in the "three major areas: research, teaching and service." The committee considered Liu's failure to produce five first-author publications as required, a mediocre teaching

8

evaluation, and her failure to join any committees.  Of eleven faculty members on the committee, six voted in favor of allowing Liu to switch to the research track, four opposed allowing Liu to switch to the research track, and one abstained.  The committee also questioned if Liu would even be able to succeed on the research track, based on her past performance.  On this record, there is no genuine dispute of fact suggesting that the University's decision to switch Liu to the research track had been motivated by discriminatory animus.  Combs, 106 F.3d at 1528.

Likewise, the University provided undisputed evidence to support that Liu's ultimate termination was motivated by her poor performance on the research track.  The evidence revealed that, at Liu's first evaluation as a research track member, the faculty committee found her performance to be inadequate.  Specifically, her annual evaluation form showed that, of the 17 faculty members eligible to vote, all had voted against reappointment.  Further, in an email from Szapocznik to Keitz concerning Liu's non-reappointment, Szapocznik wrote that, during the meeting concerning Liu's reappointment, committee members made "extremely negative" comments concerning Liu's progress regarding research, teaching, and service.  Szapocznik specifically noted that Liu had not been active in establishing her own program of research, had received funding for only one of five proposals she submitted, and had produced only six publications with no first authorships.

9

Because the University met its burden of establishing a legitimate non-discriminatory motive, Liu is required to show that the University's contention, that Liu's employment was terminated based on her performance, is a pretext for discrimination. Crawford, 529 F.3d at 976. Liu has failed to make this showing. For starters, in response to the University's statements of facts regarding Liu's poor performance, Liu largely either admitted the statements or responded by stating "without knowledge." Further, Liu's allegations in rebuttal do not actually contradict that she was fired based on her poor performance, much less offer evidence to support that discrimination the real reason. Brooks, 446 F.3d at 1163. Liu alleged, for example, that she was the only junior faculty member to be required to write five first-author publications "within such a short time period," which she supported with statements from her sworn affidavit. However, since she does not explain how she has personal knowledge of the requirements placed upon other faculty members, her statements appear to be based "upon information and belief." Pace, 283 F.3d at 1278; Fed. R. Civ. P. 56(c)(4). Accordingly, these statements in Liu's affidavit cannot raise a genuine issue of fact.

Further, the magistrate judge asked Liu at a hearing if, aside from her own opinions, there was "anything else that you can point me to in the record that would negate or show that it's pretext, the University's position, that . . . she was almost universally reviewed by the faculty as having substandard performance."

10

The only evidence offered by Liu was two letters from faculty members praising her performance.  The University explained that these letters did not contradict that the voting faculty gave her poor reviews; both letters were written for the purpose of requesting a grant from the American Cancer Society -- not an internal evaluation -- and neither was written by a voting faculty member within Liu's department.  Accordingly, Liu was not able to expose, through genuine disputes of fact, any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the University's contention that it fired Liu based on her poor performance as to cause a reasonable factfinder to find the given reason "unworthy of credence."  Vessels, 408 F.3d at 771.

We also reject Liu's claim that the district court erred by granting summary judgment as to her FMLA claims.  The FMLA creates a series of substantive rights designed to allow eligible employees to take up to 12 weeks of unpaid leave per year for a number of purposes, including "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition."  29 U.S.C. § 2612(a)(1)(C).  The FMLA allows for two types of claims: (1) interference claims, in which an employee asserts that an employer denied or otherwise interfered with her substantive rights under the FMLA, and (2) retaliation claims, in which an employee asserts that an employer

11

discriminated against her because she engaged in activity protected by the FMLA. O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1352 (11th Cir. 2000).

To establish a prima facie case of FMLA interference, a plaintiff must show by a preponderance of the evidence that she was denied a benefit to which she was entitled under the FMLA. Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1235 (11th Cir. 2010). To establish a prima facie case of FMLA retaliation, the plaintiff must show that (1) she engaged in statutorily protected conduct, (2) she suffered a materially adverse action, and (3) the adverse action was causally related to the protected conduct. Id. at 1234. To establish a causal connection, the plaintiff must show that the decision-maker was aware of her protected conduct at the time of the adverse action and that the protected activity and adverse action were not wholly unrelated. Id. FMLA actions generally have a two-year statute of limitations, unless a plaintiff establishes that a defendant's violation was willful, in which case, the action must be brought within three years. 29 U.S.C. § 2617(c).

In this case, the district court addressed -- and rejected -- the merits of Lui's FMLA retaliation and interference claims based on the University's denial of her March 2011 request for an extension of her special review to take leave. On appeal, however, Liu raises no claims based on the March 2011 request, even when liberally construed, and never challenges the finding that she filed her claim after the standard two-year statute of limitations for FMLA claims nor argues that her

12

claims were subject to the three-year statute of limitations imposed for willful violations. Thus, she has abandoned these claims. Sapuppo, 739 F.3d at 680.

As for her claim -- raised in the district court and in this Court -- that the University retaliated against her for taking FMLA leave in October 2012, she has failed to make a prima facie showing of retaliation on this basis. As the record shows, she failed to show that her employer's adverse action -- terminating her employment -- was causally related to her protected FMLA leave. Krutzig, 602 F.3d at 1234. Liu was given written notice of her termination on October 7, 2011, and she did not submit a formal request for FMLA leave until September 2012. But Liu presented no evidence that the University, at the time it issued notice of her termination, was aware of the leave request she would make nearly a year later. Because she has not shown a causal relationship, the district court did not err in granting summary judgment on this claim.

Finally, we find no merit to Liu's argument that the district court erred by denying her request for an extension of time to take affidavits and depositions, which included a list of 49 witnesses. We review a district court's discovery rulings for abuse of discretion. Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1306 (11th Cir. 2011). A discovery ruling will not be overturned unless it resulted in substantial harm to the appellant's case. Id. at 1307. Even with a pro se litigant, the denial of a motion for extended discovery will not be

13

disturbed unless the party shows, beyond conclusory assertions, how the court's ruling resulted in substantial harm to her case. See Harrison v. Culliver, 746 F.3d 1288, 1296-97 (11th Cir. 2014) (holding that a denial of a pro se state prisoner's motion for discovery was not an abuse of discretion, in prisoner's § 1983 action).

Under Fed. R. Civ. P. 16(b), the district court must issue a scheduling order that limits the time to complete discovery. Fed. R. Civ. P. 16(b)(3)(A). The schedule set forth by the court "may be modified only for good cause and with the judge's consent." Id. 16(b)(4). While a court has the authority to grant an extension to the discovery deadline for good cause, the court is under no obligation to do so and it is generally not an abuse of discretion to hold parties to the clear terms of a scheduling order. Josendis, 662 F.3d at 1307. Further, the court has broad discretion to compel or deny discovery under Fed. R. Civ. P. 26. Id. at 1306.

Here, Liu cannot show that the district court abused its discretion. The district court's scheduling order clearly provided that April 3, 2015 was the deadline to complete discovery, and holding Liu to the terms of the order was well within the court's discretion. Josendis, 662 F.3d at 1307. Once a scheduling order is set, a district court may amend the order, but is under no obligation to do so. See Fed. R. Civ. P. 16(b)(4); Josendis, 662 F.3d at 1307. Further, when granting Liu's first motion to extend time to respond to the motion for summary judgment, the court advised Liu that "no further extensions will be given without good cause."

14

The fact the Liu had obtained counsel only several days prior to the discovery deadline could have prompted the court to offer an extension; however, finding that the act of obtaining new counsel does not warrant "extending the deadlines that have been known and imposed since June 9, 2014" was within the court's discretion.  Moreover, the court noted that, although Liu had proceeded pro se for part of the discovery period, she had been represented by counsel for over a year and half during the case.  The court also noted that Liu had already conducted significant discovery and that she "chose to conduct the discovery that she served and Plaintiff's and/or her counsel's decision not to pursue certain other avenues of discovery does not warrant any modification of the deadlines which were known both to Plaintiff and her counsel."   Accordingly, the district court did not abuse its discretion in declining Liu's motion.

Nor did Liu make a sufficient showing to the district court to demonstrate how denying her additional discovery would substantially harm her case. Harrison, 756 F.3d at 1296-97.  In her motion for an extension, she did not identify any evidence that she hoped to obtain during additional discovery, much less explain how such evidence was crucial to her case.  This further demonstrates that the court did not abuse its discretion in denying the request.  See Josendis, 662 F.3d at 1306.

15

**AFFIRMED**.[2]

---

[2] Nevertheless, we DENY Appellee's motion under Fed. R. App. P. 38 for damages and costs against the Appellant.