A96A1640, A96A1641. CARTER v. HUBBARD et al.; and vice versa.
(480 SE2d 382)

RUFFIN, Judge.

Randall Carter sued his former employer, Arrowhead Lock & Safe, Inc. ("Arrowhead"), and two of its corporate officers, Joseph Hubbard and Fran Henderson. Carter alleged that the defendants wrongfully terminated his employment and thereafter libeled him in a letter Arrowhead allegedly sent to individuals outside of the Arrowhead corporate structure. In Case No. A96A1640 Carter appeals the trial court's grant of summary judgment to the defendants on his libel claim, and in Case No. A96A1641 the defendants appeal the trial court's denial of their motion for summary judgment on Carter's wrongful termination claim. For the following reasons, we affirm the trial court's ruling on Carter's libel claim and reverse the trial court's ruling on Carter's wrongful termination claim.

"[S]ummary judgment is appropriate when the court, viewing all the facts and reasonable inferences from those facts in a light most favorable to the non-moving party, concludes that the evidence does not create a triable issue as to each essential element of the case." *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (4) (405 SE2d 474) (1991). In their motion for summary judgment, defendants presented undisputed evidence showing that they hired Carter as a general manager on January 15, 1990. Shortly after hiring Carter, Arrowhead's president, Henderson, wrote and signed a memorandum to Carter "[t]o summarize [their] discussions, agreements, and long term intentions." Among other things, the memorandum discussed Carter's compensation package for the "first year" of employment and provided that "[i]t's the intention of the owners of Arrowhead to develop a 5 year business program with Carter."

On October 17, 1990, Carter submitted a resignation letter to Arrowhead which provided that he would resign "effective 10/26/90." According to Arrowhead, it accepted Carter's resignation, rehired

him as a salesman at the end of October, and paid him a base salary with commissions. Arrowhead presented evidence that it continued to employ Carter until the first week of March 1991, when he left following a dispute with Henderson. Henderson stated that Carter "abandoned his job" and she had the locks changed after the argument. Carter alleges that Arrowhead never accepted his resignation, but merely reduced his compensation and subsequently terminated him on March 8, 1991.

Shortly after Carter left Arrowhead, Hubbard received information that Carter was attempting "to trade [keying records of Arrowhead clients] in exchange for a job [with a competitor]." In response, Arrowhead sent Carter a letter addressing his reported unauthorized use of the keying records. This letter, which formed the basis of Carter's libel claim, indicated that it was carbon copied to Chuck Williams and Brook Blake, whom Carter characterizes as "two individuals who are involved with the locksmith industry but who were not a part of [Arrowhead's] corporation." Although Hubbard acknowledged that he wrote in the letter that he would "c.c." Williams and Blake, he testified that he actually sent it only to Carter and Henderson. In support of this testimony, Arrowhead presented the affidavits of both Williams and Blake, in which they state that "[a]t no time have I ever received a letter or other written correspondence from any of the defendants regarding Randall Carter. Nor have I ever heard any of the defendants make or cause to be made any oral derogatory or uncomplimentary statements, remarks or comments about Randall Carter."

### Case No. A96A1640

1. Carter contends the trial court erred in finding that there was no evidence showing the letter was published to Williams and Blake.[1] We disagree.

It is not disputed that publication of the allegedly libelous letter is essential to Carter's claim. *Sigmon v. Womack*, 158 Ga. App. 47, 48 (1) (279 SE2d 254) (1981). " 'In order to effect the publication of a libel there must be a reading of it. Not only that, there must be an understanding of its meaning by the person reading it. . . . Since the

---

[1] Although the letter also indicated that copies were sent to two other individuals within the Arrowhead corporate structure, Carter does not rely on these communications in support of his libel claim. See *Kitchen Hardware, Ltd. v. Kuehne & Nagel, Inc.*, 205 Ga. App. 94, 95 (2) (421 SE2d 550) (1992) (it is well settled that a communication made by one corporate agent to another is not publication in the legal sense); *Carter v. Willowrun Condominium Assn.*, 179 Ga. App. 257, 258 (1) (345 SE2d 924) (1986) (certain intracorporate communications regarding the conduct of persons subject to the corporation's authority held not to have been published).

gravamen of civil libel is injury to reputation, where the evidence demands a finding that the libel was not read by those to whom it was alleged to have been communicated, and there is no evidence authorizing an inference that it was communicated to anyone else who read it, or will be presumed to have read it, the case must fall.' . . . [Cit.]" (Emphasis omitted.) Id. at 50.

In this case, even if we assume the evidence authorized a finding that any of the defendants *sent* the letter to Williams or Blake, the affidavits and deposition testimony presented by the defendants in support of their motion clearly show that neither of those two individuals received or read the letter. The defendants accordingly have met their burden of showing by the record that the letter was not published to a third party. See id. Because Carter failed to present any evidence creating a genuine issue of material fact regarding publication, the trial court did not err in granting summary judgment to the defendants on this claim.

### Case No. A96A1641

2. The defendants contend that even if Carter did not resign in October 1990, his employment contract was only for a term of one year beginning January 19, 1990, and that it had expired by the time Carter left Arrowhead in March 1991. We agree.

The employment agreement in this case did not comply with the statute of frauds. OCGA § 13-5-30 (5). "The Statute of Frauds requires that an agreement not to be performed within a year of its making must be in writing and signed by the party to be charged with the obligation. The writing or memorandum must be complete in itself, with nothing left in parol. It must show all the terms of the contract, the parties, and their assent thereto. . . . The test of an enforceable contract is whether it is expressed in language sufficiently plain and explicit to convey what the parties agreed upon." (Citations and punctuation omitted.) *Toncee, Inc. v. Thomas*, 219 Ga. App. 539, 540 (2) (466 SE2d 27) (1995). The amount of compensation is an essential element of an employment contract that must be stated with sufficient definiteness. *Sawyer v. Roberts*, 208 Ga. App. 870 (432 SE2d 610) (1993). Our Supreme Court has recently observed that "[t]o be enforceable, a promise of future compensation must be made at the beginning of the employment. [Cits.]" *Arby's, Inc. v. Cooper*, 265 Ga. 240, 241 (454 SE2d 488) (1995). The promise must "be for an exact amount [of compensation] or based upon a 'formula or method for determining the exact amount of the [compensation]. (Cits.)' [Cit.]" Id.

In this case, even if we assume that there is sufficient evidence to show that the term of Carter's employment contract is five years,

the evidence is still insufficient to establish Carter's compensation beyond the first year. As stated above, the memorandum from Henderson discussed Carter's compensation package for only the "first year" of his employment. Nothing in the memorandum provides any basis for determining Carter's compensation beyond that time. Because the contract in this case failed to specifically provide for Carter's compensation beyond his first year of employment, the contract was unenforceable beyond that time. See *Sawyer*, supra. Any verbal agreements between the parties that purported to establish Carter's compensation for the five-year term would likewise be unenforceable under the statute of frauds. See *Toncee, Inc.*, supra; *Sawyer*, supra.

Accordingly, any employment contract between the parties was unenforceable beyond January 15, 1991, which was one year after Carter began working for Arrowhead. After such time, Carter was without an enforceable contract and under Georgia law considered an employee who could be terminated at will. *Wheeling v. Ring Radio Co.*, 213 Ga. App. 210 (444 SE2d 144) (1994). It follows that even if Carter did not resign or abandon his position, but rather was terminated by Arrowhead on March 8, 1991, such termination was not actionable under Georgia law. See id. For this reason, the trial court erred in denying the defendants' motion for summary judgment on Carter's wrongful termination claim. See *Sawyer*, supra.

*Judgment affirmed in Case No. A96A1640. Judgment reversed in Case No. A96A1641. McMurray, P. J., and Johnson, J., concur.*

DECIDED JANUARY 28, 1997.

*Jack J. Menendez, Monzer J. Mansour*, for appellant.
*Dupree, Johnson & Poole, Hylton B. Dupree, Jr., Russell D. King*, for appellees.

