## A11A1835. JONES v. HOUSING AUTHORITY OF FULTON COUNTY.
### (726 SE2d 484)

BLACKWELL, Judge.

The Housing Authority of Fulton County terminated the employment of its chief executive officer, Jonathan Jones, ostensibly for cause, and Jones then sued the Authority for breach of his employment agreement, alleging that his termination was, in fact, without cause and that the Authority failed to pay him certain compensation and benefits due under the agreement. The Authority moved for summary judgment, and Jones moved for partial summary judgment on his claim for unpaid compensation and benefits. The court below awarded summary judgment to the Authority, denied partial summary judgment to Jones, and awarded attorney fees and expenses to the Authority. Jones now appeals, but we find no error and affirm the judgment below.

The standard for summary judgment is settled and familiar. "Summary judgment is warranted when any material fact is undisputed, as shown by the pleadings and record evidence, and this fact entitles the moving party to judgment as a matter of law." *Strength v. Lovett*, 311 Ga. App. 35, 39 (2) (714 SE2d 723) (2011); see also *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010). So, as we have explained before, "to prevail on a motion for summary judgment, the moving party must show that there is no genuine dispute as to a specific material fact and that this specific fact is enough, regardless of any other facts in the case, to entitle the moving party to judgment as a matter of law." *Strength*, 311 Ga. App. at 39 (2). We review an award of summary judgment de novo, viewing the evidence in the record, as well as all inferences that might reasonably be drawn from that evidence, in the light most favorable to the nonmoving party. *Cowart*, 287 Ga. at 624 (1) (a).

So viewed, the record shows that the Authority is an agency that helps low-to-moderate-income families obtain affordable housing in Fulton County, and Jones served as its chief executive officer from May 2005 until November 2009. During that time, Jones was responsible for, among other things, "assur[ing] that [Authority] activities are within federal and state laws, regulations, policies, and procedures" and "directly supervis[ing] the Senior Director/Directors," and Jones had "ultimate responsibility for all federal programs" in which the Authority participated.[1] According to his employment agreement, if Jones "perform[ed] any act [that] is materially harmful to the business of [the Authority]," the Authority was permitted to terminate his employment for cause, meaning that Jones would be entitled to his base compensation through the date of termination and nothing more.

The Department of Housing and Urban Development ("HUD") funds certain Authority programs, including its regular voucher program,[2] portability voucher program,[3] and Red Oak Housing Project.[4] Federal funds made available by HUD to the Authority for the voucher programs and Red Oak Housing Project are subject to certain HUD rules and regulations. While Jones served as chief executive officer, the Authority violated a number of these rules and regulations. For instance, the Authority incorrectly and inconsistently reported data to HUD regarding Authority funds, the Authority did not properly collect funds for portability voucher payments from the issuing housing agencies, and HUD contributions to the regular voucher program were improperly used to make portability voucher payments. In addition, proceeds from the sale of the Red Oak Housing Project were used to make portability voucher payments, rather than

---

[1] In addition, Jones was responsible for "reviewing financial reports," "maintain[ing] official records and accounts," acting as the "custodian of all funds and properties" of the Authority, and "direct[ing] the preparation and maintenance of all financial records."

[2] Under the regular voucher program, the Authority issues vouchers to qualified families, those families submit the vouchers to participating landlords, and the landlords, in turn, redeem the vouchers with the Authority for payment. The Authority funds its regular voucher payments with annual contributions from HUD, and those contributions are only permitted to be used for regular voucher payments.

[3] Portability vouchers are issued to qualified families by local housing agencies other than the Authority. When families move into Fulton County with portability vouchers, the Authority redeems those vouchers for payment. The annual contributions of HUD to the Authority cannot be used for payment of portability vouchers. The Authority instead must obtain the funds to make its portability voucher payments from the housing agencies that issued the vouchers.

[4] The Authority uses HUD funds, subject to restrictions, to acquire and maintain certain affordable housing facilities, and one such facility was known as the Red Oak Housing Project. HUD authorized the Authority to sell the Red Oak Housing Project, subject to the condition that the proceeds of the sale would only be used "for the development of other affordable housing" and, specifically, for housing known as the Riverside Replacement Housing Project.

to develop other affordable housing, the Riverside Replacement Housing Project in particular.

During his time as chief executive officer, Jones executed two certifications in which he guaranteed that Red Oak funds would be used only for the development of other affordable housing, and he signed a commitment in which he guaranteed that those funds would be used specifically for the Riverside Replacement Housing Project. Twice, the chief financial officer of the Authority notified Jones that Red Oak sales proceeds were being diverted to cover portability voucher payments, but no evidence suggests that Jones ever objected or questioned the propriety of these diversions. Moreover, Jones admits that he did not seek approval for these diversions or notify the Authority Board or HUD of the diversions. Likewise, no evidence indicates that Jones ever objected to, questioned, or notified the Board or HUD of the improper use of HUD funds reserved for regular voucher payments to cover portability voucher payments.

After the Authority no longer had sufficient funds to cover its regular voucher payments, Jones asked a consultant to examine the funding issues and to develop a strategy for the Authority. The consultant identified the HUD violations mentioned above as the causes of the budget shortfalls at the Authority. Thereafter, Jones wrote a memo to the Board, explaining these findings. Jones admitted that "certain administrative actions probably should have been taken (such as contacting HUD)" and that the failure to take such action "result[ed] in the problematic situation the [Authority] is facing today." And Jones does not dispute that the violations of HUD rules and regulations led to "a financial crisis" for the Authority.[5] In November 2009, the Board notified Jones that it unanimously had decided to terminate his employment for "cause." In turn, Jones filed a complaint against the Authority for breach of contract, alleging that the Authority lacked any "cause" to terminate his employment and that it failed to pay the compensation and benefits he was due.

1. We first address the contention that the improper diversion and use of federal funds is no basis under the employment agreement for a termination for cause, inasmuch as the chief financial officer of the Authority, not Jones himself, actually diverted the funds. With

---

[5] In light of the inaccurate reporting of financial data to HUD, HUD reduced its funding to the Authority by more than $600,000 in 2009. And because the Authority improperly used its HUD annual contributions and Red Oak sales proceeds to cover its portability voucher payments, the Authority became liable to HUD for reimbursement of those funds, but it lacked the resources to repay HUD. For the same reason, the Authority did not have sufficient funds to timely cover its regular voucher payments, leaving tenants and landlords without funding. Lacking sufficient funds to cover its financial obligations, the Authority was forced to make cutbacks in its programs and services and reduce staff compensation and benefits.

respect to the federal funds, Jones argues that he did not "perform any actions," as that term is used in his employment agreement, that caused material harm to the business of the Authority. Jones seems to read his employment agreement as literally requiring some affirmative act on his part to justify a termination for cause, but that literal reading of the agreement cannot possibly be right. If it were, then Jones could have best secured his job by sitting at home and doing absolutely nothing, thereby performing no affirmative acts on which a termination might be based. That almost certainly is not the meaning of the relevant contractual language.

But in any event, the record shows that Jones *did* perform some acts that materially harmed the business of the Authority. In particular, he affirmatively certified that Red Oak funds would be used only for the development of other affordable housing, the Riverside Replacement Housing Project specifically. Moreover, he ratified the diversions of restricted HUD funds for improper purposes by the chief financial officer, contrary to his certifications. When a principal ratifies the acts of his agent, he is as responsible for those acts as if he had done the acts himself. See *Ford Motor Co. v. Abercrombie*, 207 Ga. 464, 475 (62 SE2d 209) (1950) ("[t]he principal is bound by the authorized acts of his agent as effectively as if he had been present and personally committed that act"). "A ratification may be . . . implied from the acts or silence of the principal." OCGA § 10-6-52. And while the question of ratification is usually one for the trier of fact, *Wielgorecki v. White*, 133 Ga. App. 834, 838 (212 SE2d 480) (1975), when an agent informs his principal about what the agent has done, "the principal must express his dissatisfaction within a reasonable time, otherwise his assent to his agent's acts will be presumed." *Dobbs v. Titan Properties*, 178 Ga. App. 389, 390 (343 SE2d 419) (1986) (citation and punctuation omitted).

Here, the record shows that Jones was responsible for supervising the chief financial officer, and he was required to express his dissatisfaction with, or at least question, the unlawful diversions to avoid a presumption that he ratified them.[6] On two separate occasions, the chief financial officer expressly notified Jones that Red Oak sales proceeds were being transferred to cover portability voucher payments. Jones knew that such use of Red Oak funds violated HUD restrictions, but Jones did not seek approval for the unlawful transfers or notify the Board or HUD that the transfers were being made.

---

[6] Indeed, Jones was the custodian of all funds and was responsible for ensuring compliance with HUD restrictions. Thus, it was Jones's duty to ensure that restricted HUD funds were used for proper purposes.

Jones has offered no evidence that he questioned, raised an objection to, or expressed any dissatisfaction with the transfers. As a result, Jones is presumed to have ratified the transfers by his acquiescence or silence.

The misuse of restricted HUD funds, such as the Red Oak funds, undisputably caused material harm to the business of the Authority. Because the undisputed facts show that Jones ratified such misuse, he performed an action that caused material harm to the Authority within the meaning of the termination for cause provisions of his employment agreement, and for that reason, the Authority was entitled to terminate his employment for cause.

2. We next address the contention that the trial court erred when it denied partial summary judgment to Jones on his claim that the Authority was required under his employment agreement to pay a certain amount into a pension plan for his benefit. As noted by the court below, the employment contract provided only that the Authority would contribute "an amount to be agreed upon[,]" but the plan never was funded. The trial court found that the contractual provision regarding the plan was an unenforceable agreement to agree because it contained "no specifics regarding [the] terms and conditions [of the plan]," and the only evidence offered to show that the parties had agreed upon the amount to be contributed was a "self-serving affidavit" in which Jones claimed that the parties, in fact, had agreed to an amount that the Authority would pay into the pension plan.

Pursuant to the Statute of Frauds, a contract that is not to be fully performed within one year from the making thereof must be memorialized "in writing and signed by the party to be charged therewith or some person lawfully authorized by him." OCGA § 13-5-30. Parol evidence is not admissible to supply any missing essential element of such a contract, *Sawyer v. Roberts*, 208 Ga. App. 870, 871 (432 SE2d 610) (1993), and the amount of compensation is one of the essential elements of an employment contract. *Carter v. Hubbard*, 224 Ga. App. 375, 377 (480 SE2d 382) (1997). Thus, parol evidence is not admissible to establish the amount of compensation owed to an employee under an employment contract for a term of more than one year. See id. ("to be enforceable, a promise of future compensation must be made at the beginning of the employment . . . [and] must be for an exact amount of compensation or based upon a formula or method for determining the exact amount of the compensation") (punctuation omitted) (quoting *Arby's, Inc. v. Cooper*, 265 Ga. 240, 241 (454 SE2d 488) (1995)); see also *Edwards v. Central Ga. HHS*, 253 Ga. App. 304, 306-307 (558 SE2d 815) (2002) (finding that an employee's affidavit was insufficient evidence of an agreement as

to the amount of a bonus to be paid to the employee to overcome the employer's motion for summary judgment on the employee's claim for breach of contract).

Here, the trial court did not err when it refused to consider Jones's affidavit as evidence of the amount to be paid into a deferred compensation plan because that amount could only have been established by a written agreement. As an agreement that was not to be fully performed within one year, Jones's employment agreement falls within the purview of the Statute of Frauds. Consequently, parol evidence is not admissible to supply any of its essential terms, including the amount of compensation owed to Jones thereunder. The contract does not identify an amount of compensation to be paid into a deferred compensation plan, nor does it identify a formula or method for determining such an amount. And Jones has not offered any evidence that the parties reached an agreement as to such an amount, formula, or method *in writing*. As a matter of law, Jones's affidavit is parol evidence, which is inadmissible for the purpose of proving the existence of such an agreement. See *Edwards*, 253 Ga. App. at 306-307; *Carter*, 224 Ga. App. at 377. Given that there is no admissible evidence of the amount to be paid into a deferred compensation plan for Jones's benefit, the court below properly found that the contractual provision for the establishment of such a plan is unenforceable.

*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*

DECIDED MARCH 20, 2012.

*Albert L. Kemp, Jr.*, for appellant.
*Carothers & Mitchell, Richard A. Carothers, Cheryl B. Reid*, for appellee.